118 So.2d 206 (1960)
Willie ANDREWS, Petitioner,
v.
C.B.S. DIVISION, MAULE INDUSTRIES and Corporate Group Service, Inc., and Florida Industrial Commission, Tallahassee, Florida, Respondents.
Supreme Court of Florida.
February 12, 1960.
Rehearing Denied March 22, 1960.
*208 Harry Goodmark, West Palm Beach, for petitioner.
Jones, Adams, Paine & Foster, West Palm Beach, for C.B.S. Division, Maule Industries and Corporate Group Service, Inc.
Paul E. Speh and Burnis T. Coleman, Tallahassee, for Florida Industrial Commission, respondents.
DREW, Justice.
This cause is before the Court on petition for certiorari to review an order of the full commission affirming an award of the deputy commissioner on the ground that such award was supported by competent, substantial evidence.
The question we have for decision, therefore, basically is whether there is substantial, competent evidence in accordance with logic and reason to sustain the finding of the deputy commissioner[1] that there was no causative connection between the accidents and the petitioner's (hereinafter designated as claimant) rheumatoid arthritis and that the claimant reached maximum improvement on January 20, 1958 without permanent partial disability. The evidence before the deputy commissioner *209 was that the claimant had been in excellent health before he suffered two accidents on the job. The claimant was a block mover working in damp, wet and sometimes cold conditions. The first accident was on November 11, 1957 when claimant fell from a concrete block injuring his right ankle. The second accident was on December 20, 1957 about which the deputy failed to adduce testimony. Claimant was treated and advised to return to work but his condition after the second accident was diagnosed as rheumatoid arthritis. This diagnosis was not made until April 17, 1958. Claimant was unable to work after that date. While six doctors testified in the hearings before the deputy commissioner, such deputy commissioner relied primarily to support his findings upon the testimony of only three,[2] failing in any way to give the testimony *210 of the other three doctors the benefit of his judicial opinion in accordance with the requirements of Hardy v. City of Tarpon Springs, Fla. 1955, 81 So.2d 503, 505.[3]
Moreover, the deputy commissioner failed to consider, in the weighing of the evidence and making reasonable deductions therefrom, the relative merits of the individual accidents, i.e. the first accident of November 11, 1957 and the second accident of December 20, 1957 as to the question of whether the condition of the claimant was aggravated by the second accident or whether the condition of the claimant as alleged arose from either the alleged pre-existing condition plus the first accident, the alleged pre-existing condition plus the second accident or the alleged pre-existing condition plus the first and second accidents. In these respects, at least, the order of the deputy commissioner is inadequate to a proper judicial review.
We now come to the question of whether there is substantial, competent evidence which accords with logic and reason to sustain the finding of the deputy commissioner that there was no causative connection between the accidents and the petitioner's rheumatoid arthritis and that the petitioner reached maximum improvement on January 20, 1958 without permanent partial disability.
In the instant case, the record shows that the medical evidence of the three physicians relied upon by the deputy commissioner to support his findings is in fact contradictory to such an extent that it, without the medical evidence submitted by the claimant and the claimant's own testimony, coupled with the consistent, steady and uninterrupted deterioration of claimant's condition brought on by the spread of the arthritis,[4] could not have been considered as "competent, substantial evidence" since it did not establish a substantial basis of fact from which the fact at issue could have been reasonably inferred. In other words, the evidence relied upon by the deputy commissioner and interpreted by him when considered with the other evidence in the record neither discussed nor referred to by the commissioner[5] was not such relevant evidence as a reasonable mind would accept as adequate to support the conclusion at which he arrived and, therefore, neither the evidence relied upon nor the conclusion reached thereon was in accord with logic and reason as the law requires.[6] Most of the cases of this Court concerning this question use the expression "such order must be supported by `competent, substantial evidence which accords with logic and reason.'" While, of course, the evidence must accord with logic and reason (otherwise it would not be competent) it is really the result that must attain that quality. To put *211 it another way, if the evidence is not logical and reasonable, a finding based on and supported by such evidence would be based on incompetent evidence and hence be contrary to law.
The responsibility of the deputy commissioner to evaluate all of the testimony takes precedence over the legal theory that the opinions of medical experts are not in and of themselves conclusive in matters wherein they are called to testify. The weight of all the opinions of medical experts must be considered in the order of the deputy commissioner before such order may be considered as having been supported by competent, substantial evidence or, it must appear from the deputy's order that some basis existed for rejecting  or qualifiedly considering medical testimony that otherwise appears to be valid and acceptable. In the instant case, the order fails to recognize the opinions of the medical experts testifying on behalf of the claimant other than by inference, or to give any weight to them or explain why they were not recognized and considered along with those of the other physicians.[7] The order should have considered all of the evidence which included the opinions of those physicians relied upon by the claimant as well as those relied upon by the commissioner in support of his order so, as we have stated, a reviewing tribunal can properly evaluate the correctness of the deputy's findings and determine, in fact, whether such order is supported by the quantity and quality of evidence which the law requires.[8]
We need not delve into the record as to the matter of aggravation itself except to point out the great weight of authority in such cases is to the effect that where an employee inflicted with a disease, known or unknown, receives a personal injury under such circumstances that he might have appealed to the workmen's compensation act, F.S.A. § 440.01 et seq. for relief on account of the injury had there been no disease involved, but the injury aggravates or accelerates the progress of the disease materially contributing to hasten its culmination in disability, there may be a compensation award.[9]
The evaluation of conflicting medical opinions in these cases has been a source of much litigation and dispute. Many years ago this Court laid down the rule that such expert testimony should be weighed and evaluated by the deputy commissioners as other testimony, and that the competent, substantial evidence rule was applicable in reviewing a deputy commissioner's findings thereon. There are necessary limitations, however, upon that broad pronouncement. In weighing the testimony of witnesses in general, the triers of fact may, under proper circumstances, accept the testimony of one and reject that of the other. The considerations which enter into the evaluation of the testimony of the ordinary witness are not ordinarily present in weighing and evaluating the testimony of experts. Ordinarily one called in as an expert is wholly disinterested and, therefore, the rule that a witness' testimony may be weighed by his interest in the outcome of the case would not be an element of consideration. Generally, experience, education, integrity, or the lack of these qualities; specialization in a particular field  or the fact that the *212 doctor is the treating physician may, of course, be taken into consideration by the deputy, but the factors which influence his view or lead him to give greater or less weight to one rather than another should be stated so that the reviewing authority may be able to determine whether the result accords with logic and reason  or to put it another way  whether the result is supported by "competent, substantial evidence".
The instant case presents a classic example of diametrically opposed opinions from what appear to be qualified doctors. It must be admitted that this is not an unusual occurrence in these cases. As we have pointed out, the law does not permit the deputy commissioner to select the testimony of the medical witness he wishes to believe and reject the others without some logical reason for doing so. And, we repeat, the reviewing tribunal cannot determine the correctness of the conclusions of the deputy commissioner unless he makes proper findings and explains his reasons for rejecting or accepting the testimony of one medical expert over that of another. The purpose of a reviewing tribunal is to determine the correctness of the actions being reviewed, not to read  and decide for itself  the weight of the evidence.
In those instances where the scales are evenly balanced, so far as medical testimony is concerned, the deputy commissioner may be required to turn to the other evidence in the record, including that of the claimant, the history of the disease, its steady or intermittent progression and other physical facts in order to determine where the truth lies and which medical testimony, otherwise competent and substantial, accords with logic and reason. Findings of the kind required hereby and by other opinions of this Court may be burdensome to the triers of fact. Their findings, it must be remembered, have been accorded great weight by the reviewing authorities. Such findings are usually the very foundation upon which substantial rights are granted or denied and, therefore, should not be vague, speculative or inconclusive.
The order of the full commission approving the compensation order of the deputy commissioner, for the reasons herein pronounced, must be and is hereby quashed with directions to enter an order sending the cause back to the deputy commissioner for further consideration in accordance with the views herein expressed.
It is so ordered.
ROBERTS, THORNAL and O'CONNELL, JJ., concur.
THOMAS, C.J., dissents.
NOTES
[1] United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741, 745:

"We are of the opinion that the `substantial evidence' rule should be invoked in all cases. Even in cases which must be resolved upon a true appraisal of testimony of medical experts, the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them."
[2] The following are the pertinent portions of the deputy commissioner's order:

"It was stipulated that the date of first accident was November 11, 1957; that the first date of disability was November 13, 1957; that there was a re-injury on December 20, 1957; that claimant was an employee of the employer at the time of the accidents, and said accidents arose out of and in the course of claimant's employment; that claimant's average weekly wage was $77.03; that compensation was paid from November 17, 1957, through December 1, 1957; claimant returned to work on December 2, 1957, and worked until December 24, 1957; compensation was paid thereafter from December 24, 1957, through January 20, 1958; that claimant returned to work on January 21, 1958, and worked until April 15, 1958; that claimant returned to work for the same employer at the same wage on the two dates above mentioned, to-wit, December 2, 1957 and January 21, 1958.
"Upon consideration of the evidence presented, the undersigned Deputy Commissioner finds as follows:
"1. The questions presented to this Deputy were, in substance, whether the rheumatoid arthritis from which claimant suffers was caused by the accidents or working conditions, aggravated by the accidents or working conditions, or accelerated by the accidents or working conditions. Further questions involved were, whether claimant is entitled to additional temporary total and permanent partial benefits, and whether claimant has reached his date of maximum medical improvement. Testimony of the following doctors was produced: Dr. Vitol S. Shepard; Dr. James R. Brandon; Dr. Cabell Young; Dr. H.J. Roberts; Dr. Phyllis Vaughn and Dr. Herman Boughton.
"2. It was developed that extreme weather conditions could affect the disease of rheumatoid arthritis, it being further reflected by the testimony, that in claimant's occupation he worked from approximately 3:00 o'clock AM until approximately noon of each day. Claimant wore boots in his work and water would drip on his feet, with some of the moisture getting into the boots. The initial accident resulted in a sprain of claimant's right ankle, the skin not being broken during this accident. Claimant was paid compensation on two occasions, as appears in stipulation, working thereafter from January 21, 1958, to April 15, 1958.
"3. Relying primarily on the testimony of Dr. Young, Dr. Vaughn and Dr. Brandon, it is found that claimant's accidents did not cause the rheumatoid arthritis, did not aggravate the rheumatoid arthritis, and did not accelerate the rheumatoid arthritis. Further, concerning whether the water, which came into contact with claimant's foot in the employment, has any effect on the rheumatoid arthritis, and again, relying primarily on the testimony of Dr. Brandon, Dr. Young and Dr. Vaughn, the exposures, if they could be considered as such, were not of such degree of extreme exposure to allow the working conditions to have caused the rheumatoid arthritis. Along the same lines, and relying primarily on the testimony of the aforementioned doctors, it is my finding that the working conditions did not accelerate or aggravate the rheumatoid arthritis condition of the claimant.
"It is the further finding of this Deputy that Dr. Young, the treating physician, accurately summarized the existing situation by indicating that the rheumatoid arthritis was not related to the accidents or working conditions, but said rheumatoid arthritis was merely coincidental.
"4. Relying further on the testimony of the treating physician, Dr. Young, it is found that claimant reached his date of maximum improvement from the accidents on the job, on or about January 20, 1958, and it is the further finding of this Deputy that there was no permanent partial disability sustained by the claimant from his injuries sustained on the job.
"5. Regarding medical bills claimed by the claimant, it is the finding of this Deputy, that Dr. Young did not, as a result of the accidents, prescribe epsom salts, alcohol, aspirin, vitamins or any of the other drugs claimed by the claimant, and that said drug bills are related to claimant's rheumatoid arthritis condition and not to his injuries."
[3] "Where there is a failure by the Deputy Commissioner to make adequate findings of fact in support of his decision, the order, upon review, ordinarily must be reversed and the cause remanded for compliance with the statutory requirements, either with or without a new hearing of the parties as the circumstances may require. This view is the accepted rule."
[4] Cf. David M. Woolin & Son, Inc. v. McKain, Fla.App. 1959, 110 So.2d 92.
[5] Particularly the uncontradicted evidence of claimant and the three other physicians who testified.
[6] DeGroot v. Sheffield, Fla. 1957, 95 So.2d 912, at page 916:

"* * * evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the `substantial' evidence should also be `competent.'"
Florida Industrial Commission v. Nordin, Fla.App. 1958, 101 So.2d 890.
[7] One of whom, at least, appeared to be the best qualified of all to testify as to the particular medical problem under consideration.
[8] Andrews v. Strecker Body Builders, Fla. 1957, 92 So.2d 521, at page 523.
[9] Davis v. Artley Const. Co., 1944, 154 Fla. 481, 18 So.2d 255. The Court also held in this case that the employer accepts the employee in such physical condition as he finds him and assumes the risk of a diseased condition aggravated by injury, compensation not being made to depend upon the condition of health of the employee, but for an injury which is a hazard of employment. See 99 C.J.S. Workmen's Compensation § 181 (1958); Parsons, The Substantial Evidence Rule in Florida Administrative Law, 6 U. of Fla.L.Rev. 481, 502 (1953).