562 So.2d 746 (1990)
Margaret THOMAS, Appellant,
v.
The SALVATION ARMY and Liberty Mutual Insurance Co., Appellees.
No. 89-1188.
District Court of Appeal of Florida, First District.
May 14, 1990.
Rehearing Denied July 5, 1990.
*747 C. Randal Morcroff, Deerfield Beach, for appellant.
Anthony J. Beisler, III, P.A., Fort Lauderdale, for appellees.
JOANOS, Judge.
Claimant in this workers' compensation case appeals an order of the judge of compensation claims denying payment of medical bills for treatment of claimant's high blood pressure and ulcer condition. The issues for review concern the propriety of the judge's rejection of medical testimony that claimant's high blood pressure is causally related to her industrial accident, and of the finding that claimant's ulcer condition is not related to her industrial accident. We reverse.
The record reflects that claimant suffered a back injury resulting from a fall on a cobblestone floor at work on April 15, 1988. Because claimant did not think her injury was serious, she did not seek medical help until three weeks later, when one morning she found herself unable to get out of bed. When informed that claimant was unable to work, the insurance carrier had her examined by an orthopedic surgeon. However, claimant continued to see Dr. Preste, the internist who is her family physician.
On November 16, 1988, claimant filed a claim for benefits, seeking authorization of, and payment for, Dr. Preste's treatment of her high blood pressure and ulcer condition. The carrier defended on the ground that the blood pressure elevation and ulcer condition were not causally related to the industrial accident or its treatment.
Dr. Preste's deposition reflects that he treated claimant on May 16, 1988, one month after her fall at work. At that time, claimant had diffuse muscle spasms in her back and neck. Dr. Preste found claimant's blood pressure borderline at that time, i.e., elevated, but not requiring medication. He prescribed Darvocet, and a return visit if the problems persisted. Claimant continued to have pain, and new prescriptions were ordered.
On August 17, 1988, claimant returned to Dr. Preste for treatment of a cold. At that time, claimant advised Dr. Preste that she had been to an orthopedist and had been diagnosed as having lumbar disc disease. Claimant returned to Dr. Preste on September 19, 1988, complaining of an upper respiratory infection, and of severe epigastric pains. Dr. Preste's physical examination revealed epigastric tenderness that accorded with clinical findings suggesting gastritis, inflammation, or ulcer. In addition, claimant's blood pressure was significantly elevated, so Dr. Preste started claimant on medication for hypertension at that time.
A reading of Dr. Preste's testimony indicates a reluctance to use, or an unfamiliarity with, the terminology normally employed in determining whether there is a causal relationship between a claimant's industrial injury and medical problems that develop afterward. For example, when claimant's counsel asked Dr. Preste whether he had an opinion, based on reasonable medical probability, as to whether claimant's ulcer problem and blood pressure problem were related to her industrial accident, the following responses were elicited:
If I might indulge you and let me paraphrase your question, you're asking me, *748 could her elevation in blood pressure from the first time I have it recorded to September 19th have been elevated because of her conditions that we were seeing her for, and I would have to say yes, I [sic] could be. Let me just make a qualifier here. Whether it was acutely elevated that day because of her pain, and then the next day she was on pain medication and it was back down, it's for conjecture, but yes, stress, anxiety can aggravate blood pressure.
Q. I have to ask you to understand precisely the questions being asked because in the legal context, the use of the word could as you have answered the question, would denote possibility. It's possibly caused by or related to. My question is specifically: Could you state within reasonable medical probability which means more likely than not, that the blood pressure elevation was probably related to the history and the subsequent treatment or the medications. Can you say that within probability, or is it your testimony that it is merely possibility?
A. I hate to be into words. I think it's a little more than possible. I think it would be between sixty and ninety per cent that her blood pressure was elevated due to her condition. (Emphasis supplied.)
.....
Q. Let me repeat my former question then. We now have the medical documentation in your own chart that she did have an acute peptic ulcer, correct?
A. Correct.
Q. The question is: Do you have an opinion whether or not the development or the aggravation of that peptic ulcer was in some way causally related to the industrial accident at work?
A. In my medical opinion, taking care of Margaret and getting to know her, yes, it could have causally been related.
Q. And again 
A. Let me 
Q. Okay.
A. And most likely was related to recent stress and tension from her accident  excuse me  from the pains involved secondary to her accident.
During cross examination, when asked whether claimant is a "high strung" individual, Dr. Preste said that she was more anxious in the period from May to September 1988 than he remembered her being from prior visits. Employer/carrier's counsel elicited the following responses from Dr. Preste concerning the causal relationship issue:
Q. During this entire time that you treated her, was the blood pressure at this slightly elevated stage?
A. When she was initially seen, it was slightly elevated, and it had that one peak, and we placed her  because of the elevation of the diastolic which is severe hypertension  meets the criteria for severe hypertension on a minimum, moderate, severe basis which is greater than one ten diastolic, and I treated her at that one peak, and she had normal blood pressure on several occasions afterwards.
Q. Now, you indicated that you felt that sixty to ninety per cent of this elevated blood pressure was due to her condition, and what do you mean by her condition?
A. Her increasing and more recent stress and anxious state.
.....
Q. And the ulcer, if I understand your testimony, you say that it could or that it medically probably is related to the industrial accident?
A. Probably related to the stress, anxiety from the pain secondary to the industrial accident.
Q. Has nothing to do in your opinion with the medications or anything else? If it has a relationship, it has a relationship through what you perceive as stress and anxiety this woman feels, is that it? Is that a fair summation of 
A. I'm not sure I follow what that summation represents 
Q. Stress, tension, anxiety and the lady is uptight, and that's probably what's causing her ulcer, and that's all because of this slip and fall at work?
A. Yes.
*749 Claimant's testimony indicates that on one other occasion, some three to four years prior to the industrial accident underlying this appeal, she developed high blood pressure. At that time, claimant was a residential program manager for the Foundation of Independent Living, and was on call virtually twenty-four hours a day. On the advice of her physician, she left the position when her contract expired. Claimant said she took medication for her condition for a few months, and had experienced no further problem with blood pressure for the two to three year period prior to her compensable injury. Claimant further stated that she had never before had an ulcer.
The judge of compensation claims found that claimant had blood pressure problems "since three to four years before" the industrial accident, and expressly rejected Dr. Preste's testimony regarding causal relationship, due to "the overall vacillation and inconsistency of the testimony of this doctor." The judge further found no causal relationship between claimant's peptic ulcer and the industrial accident, concluding that it was highly questionable that a peptic ulcer could be developed within thirty days of the date of the accident.
It is an established rule that a workers' compensation claimant must prove the existence of a causal connection between the employment and injury for which benefits are sought, and the existence of causation must be based upon reasonable medical probability. Computer Products, Inc. v. Williams, 530 So.2d 1006 (Fla. 1st DCA 1988); Metric Constructors, Inc. v. Chiles, 429 So.2d 1292, 1293 (Fla. 1st DCA 1983); Scotty's, Inc. v. Jones, 393 So.2d 657, 658-659 (Fla. 1st DCA 1981). Medical evidence as to causation is particularly significant where, as in the instant case, the subject injury is not readily observable. In such instances, while medical evidence is a prerequisite to a finding of causation within reasonable medical probability, a single medical opinion is sufficient to establish causal relationship between claimant's condition and the employment. Computer Products, Inc. v. Williams, 530 So.2d at 1007.
In evaluating medical evidence, a judge of compensation claims may not reject uncontroverted medical testimony without a reasonable explanation. Andrews v. C.B.S. Division, Maule Industries, 118 So.2d 206, 212 (Fla. 1960); Philpot v. City of Miami, 541 So.2d 680, 683 (Fla. 1st DCA 1989). In other words, "[w]here the issue before the deputy commissioner involves essentially a medical question, the deputy commissioner should offer a sufficient reason for rejecting expert medical testimony, especially if such testimony is unrefuted." Curtis v. Florida Correctional Institute, 509 So.2d 1192, 1194 (Fla. 1st DCA 1987).
Moreover, when medical evidence is presented by deposition, as it was in this case, "the vantage point of this court is not inferior to that of the deputy commissioner in interpreting deposition evidence." McCabe v. Bechtel Power Corp., 510 So.2d 1056, 1059 (Fla. 1st DCA 1987).
The judge's characterization of Dr. Preste's deposition testimony as vacillating and inconsistent in this case, is analogous to the "contradictory, irreconcilable" language employed by the deputy commissioner [now judge of compensation claims] in Giaramita v. Dade County School Board, 484 So.2d 1312 (Fla. 1st DCA 1986). In Giaramita, the uncontradicted opinion of Dr. Epstein, endocrinologist, was that the claimant's hypertension, non-symptomatic before claimant suffered a compensable back injury, was aggravated by his back pain. In an August 1984 deposition, Dr. Epstein opined that claimant's hypertension could be controlled by medication, and if medication proved successful, claimant could return to some type of work. However, in his June 1985 deposition, Dr. Epstein stated that during the past year he had been unable to control claimant's blood pressure with medication, and recommended that claimant not return to work. The deputy rejected Dr. Epstein's testimony, terming it contradictory and irreconcilable, because in 1984, the doctor found claimant could return to work, while in 1985 he found claimant unable to work. The court found Dr. Epstein's testimony *750 "totally consistent in logic and reason," and "that the deputy abused his discretion in rejecting Dr. Epstein's uncontroverted medical testimony without a reasonable explanation." Giaramita, 484 So.2d at 1314.
We conclude that Dr. Preste's testimony that claimant had borderline blood pressure on May 16, 1988, and August 17, 1988, with elevated blood pressure on September 19, 1988, is consistent with his opinion that claimant's elevated blood pressure was due to pain secondary to her back injury. The back injury occurred on April 15, 1988, and remained untreated for four weeks. Claimant's blood pressure was borderline on May 16, 1988, when Dr. Preste first saw her. At that time, claimant was in pain, and manifested muscle spasms in her neck and back. The record reflects that as claimant's back condition worsened, her blood pressure increased. Although Dr. Preste's deposition testimony was not phrased in the word formula common to the workers' compensation arena, his testimony indicates the existence of a causal relationship between claimant's hypertension and her back injury in terms which equate to reasonable medical probability, i.e., "it would be" between sixty and ninety per cent that her blood pressure was elevated due to her condition." Similarly, Dr. Preste said that claimant's peptic ulcer "most likely was related to ... the pains secondary to her accident." Moreover, when employer/carrier's counsel asked Dr. Preste if it was his opinion that the stress, tension, and anxiety claimant experienced due to her fall at work was causing her ulcer, Dr. Preste clearly answered, "Yes."
A comparison of the testimony contained in the record in this case with the judge's findings as set forth in the order leads us to believe that the judge misinterpreted some of the testimony, and that this misinterpretation resulted in legal error. Specifically, the order recites that claimant "had her trouble with blood pressure since three to four years before." This is a misstatement of claimant's testimony, which was that she had suffered one prior episode of blood pressure elevation three to four years before the subject accident and injury, and that the problem resolved itself within a few months. Similarly, the judge's statement that he found "it highly questionable that a peptic ulcer could be developed within 30 days of the date of the accident," is a misstatement of the pertinent testimony. Dr. Preste stated that on September 19, 1988, claimant complained of epigastric pains, which subsequently were revealed to be caused by a peptic ulcer. The peptic ulcer complaint occurred some five months after the April 15, 1988, accident  not thirty days.
In the circumstances, we conclude that the judge of compensation claims has failed to articulate a reasonable explanation for the rejection of Dr. Preste's deposition testimony. We further conclude that a proper construction of that testimony demonstrates a causal connection between claimant's compensable injury and her subsequently developed hypertension and ulcer condition, within the standard of reasonable medical probability.
Accordingly, the order finding no causal relationship between the industrial injury and claimant's high blood pressure and ulcer condition is reversed, and the cause is remanded with directions to require the employer/carrier to pay the medical bills associated with treatment of claimant's high blood pressure and ulcer condition after September 20, 1988.
WENTWORTH, J., concurs.
THOMPSON, FORD L. (Ret.),
Associate Judge, dissents with written opinion.
THOMPSON, FORD L., Associate Judge, dissenting.
The majority reverses the order of the Judge of Compensation Claims (JCC) denying payment to Dr. Paul Preste for treatment of claimant's high blood pressure and ulcer condition and remands with directions to require the employer/carrier (EC) to pay the medical bills associated with the treatment of claimant's high blood pressure and ulcer condition after September 20. I dissent for several reasons. Dr. Preste was not and never has been an authorized treating physician. It is admitted that claimant's *751 first three visits to him on May 16, August 17, and September 19, 1988, were prior to the time that claimant's attorney ever made a request for Dr. Preste to be authorized to provide the claimant medical care. Dr. Preste never called for authorization and treated the claimant without any authorization. Even if it is conceded that all bills incurred after September 20 are payable, we have nevertheless been required to expend the time of three judges and numerous support personnel to determine whether the JCC was correct when he denied payment of two medical bills from an unauthorized doctor in the total amount of $85 in a case where the claimant was required to pay an appellate filing fee of $100.00 (now $250.00).
The letter from the EC in response to the request for the authorization of Dr. Preste, which was introduced into evidence by the claimant's attorney, clearly shows that the EC fully complied with the provisions of § 440.13, Fla. Stat. Dr. Robert Rieman, an orthopedist, was authorized from the outset of her injury. The claimant did not show up for appointments with Dr. Rieman on July 5, July 6, July 12, and July 14, after which Dr. Rieman advised that he did not wish to see the claimant again as she was an irresponsible patient. At that time the EC gave the claimant authorization to see Dr. Martin May, Dr. Edwin Kletzel, or Dr. Martin Hale. By letter dated September 22 claimant's attorney advised that the claimant was not satisfied with Dr. Kletzel, a chiropractor, and desired orthopedic treatment. The EC gave her authorization to see Dr. Martin Hale or Dr. Martin May, both orthopedists. The EC refused to authorize treatment for claimant's bronchitis which was not related to the accident. A substantial part of Dr. Preste's treatment and bill was for bronchitis and respiratory problems which he did not attribute to the accident. In any event, the EC fully complied with the law in furnishing medical treatment and is not responsible for the payment of medical bills from an unauthorized family physician from whom the claimant voluntarily sought treatment. As this court held in Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987):
An e/c is not responsible for unauthorized treatment of a workers' compensation claimant, absent a medical emergency, where a claimant arbitrarily changes doctors while the e/c is providing medical treatment, and the claimant fails to seek prior approval of the dc. Delta Airlines v. Underwood, 406 So.2d 1188 (Fla. 1st DCA 1981).
Id. at 257. There is absolutely no evidence of an emergency in this case and no showing that would warrant the payment of the medical bills of an unauthorized physician.
The majority opinion deals solely with the question of whether there was a causal relationship between the hypertension and ulcers and the compensable accident. While reasonable people could differ as to whether there might have been a causal relationship, the JCC found none existed and this finding is supported by competent substantial evidence. There is not one iota of competent substantial evidence that would support a finding that the peptic ulcer was causally related to the compensable accident, and the JCC's finding that there was no causal connection is clearly supported by the record. Throughout Dr. Preste's testimony, the claimant's attorney attempted to lead the doctor into testifying that there was a "reasonable medical probability" the hypertension and peptic ulcer were causally related to the compensable accident. He was unable to do so at all as to the peptic ulcer. As quoted by the majority the claimant's attorney asked:
Q: The question is: Do you have an opinion whether or not the development or aggravation of that peptic ulcer was in some way causally related to the industrial accident at work?
A: In my medical opinion, taking care of Margaret and getting to know her, yes, it could have been causally related.
Again the claimant's attorney questioned the doctor regarding the causal connection between the ulcer and the compensable accident, saying:
Q: Again, I don't mean to belabor the point. Are you saying it is possible that *752 the accident could have aggravated it or are you saying that probably it aggravated it.
A: I would have to remain with possible.

(Emphasis added.) "It is well established that a finding of a causal relationship must be based upon a reasonable medical probability  not possibility." Scotty's Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981) (Emphasis added.) Most of the testimony of Dr. Preste concerning causal relationship with the few exceptions quoted above is so vague and ambiguous that it would be insufficient to support a finding of causal relationship if the JCC had so ruled. However, the JCC found there was no causal relationship and our standard of review is not whether there is any evidence to support a finding in favor of the claimant but whether there is any competent substantial evidence to support the finding of the JCC that there was no causal relationship. The above quoted testimony that it was only "possible" there was a causal relationship between claimant's peptic ulcer and her compensable accident is not sufficient to support a finding of causal relationship and it is competent substantial evidence to support a finding of no causal relationship.
The majority holds that the JCC erred in rejecting the uncontroverted medical testimony of Dr. Preste without a reasonable explanation. It found the JCC failed to give a reasonable explanation, and the case was reversed and remanded with directions to require the EC to pay the medical bills of Dr. Preste associated with the treatment of claimant's high blood pressure and ulcer of September 20. The JCC did not reject Dr. Preste's testimony. He accepted his testimony which was legally insufficient to show a causal relationship. Even if he had rejected it, cases holding the JCC cannot reject uncontroverted medical testimony without giving a reasonable explanation have consistently remanded the case for further proceedings and not merely directed payment of the disputed bills. The majority relies upon Philpot v. City of Miami, 541 So.2d 680 (Fla. 1st DCA 1989), and in that case this court held:
Accordingly, the order appealed is reversed and remanded with directions to prepare an order explicating sufficient reasons for rejecting the uncontroverted medical testimony and claimant's unrefuted testimony or grant relief to the claimant.
Id. at 684. In addition, the court in Philpot authorized the taking of further testimony. Id.
For the foregoing reasons, I would affirm the decision of the JCC, but would in no event reverse and remand with instructions to enter an order directing the EC to pay Dr. Preste's medical bills.