589 So.2d 990 (1991)
Sandra M. MARLOWE, Appellant,
v.
DOGS ONLY GROOMING and the Travelers Insurance Company, Appellees.
No. 90-2994.
District Court of Appeal of Florida, First District.
November 13, 1991.
*991 Michael Broussard and John T. Willett of De Ciccio & Broussard, P.A., Orlando, for appellant.
Donna L. Kerfoot of Lorenzen & House, Tampa, for appellees.
ZEHMER, Judge.
Sandra Marlowe appeals a workers' compensation order denying her claim for attendant care benefits and disability compensation benefits. In the appealed order, the judge of compensation claims found that claimant sustained a compensable injury when she was exposed to organophosphates while working for her employer, Dogs Only Grooming; that as a result of this exposure she was temporarily totally disabled (TTD) up to the time she began a brief period of employment as a home health aide with Upjohn Nursing; and that she continued to be TTD at the time of the hearing but that her disability was attributable to non-work-related foot problems. Based on these findings, the judge ordered the employer and carrier to pay claimant TTD benefits from the date they ceased payment up to the date she began working as a home health aide but denied claimant any disability compensation benefits after that date. The judge also denied her claim for attendant care benefits.
For the reasons now discussed, we reverse the denial of TTD benefits and affirm the denial of attendant care benefits.

I.
Claimant began working as a dog groomer for her employer on March 17, 1987. As a groomer, she was required to dip dogs in a paramite solution (flea dip) and then carry them, wet, into the kennels where she used an electric appliance to blow them dry. On one occasion, she was required to mix this insecticide solution. Claimant did not wear any protective gear while grooming the dogs, and the insecticide splashed onto her clothing, arms, and face. Claimant left her job with the employer after only twenty days because she was having a problem with her elbow, and because she was beginning to experience symptoms of insecticide poisoning such as irritated eyes and mental disorientation. Two weeks after quitting this job, she went to the employer to pick up her paycheck and her *992 symptoms increased in intensity. She then went to see Dr. Wishek at an emergency walk-in clinic and described her symptoms. Dr. Wishek diagnosed claimant's condition as organophosphate poisoning, based on her exposure to the paramite solution.
On May 16, 1987, claimant moved to Wisconsin, where she sought treatment from Dr. Visti, a neurologist, and Dr. Konetzki, a specialist in the specialty of allergies and clinical ecology. Dr. Visti concluded that claimant had suffered toxic encephalopathy as a result of her exposure to organophosphates while working for the employer. Dr. Konetzki diagnosed claimant's condition as pesticide intoxication and also related it to her work at the dog grooming parlor.
On October 23, 1987, claimant went to work for Upjohn Nursing as a home health aide. The job entailed taking prepared dinners out of the refrigerator and feeding them to the patients, and making sure the patients were comfortable. She stated that she was able to fulfill the responsibilities of that job during her ten-day period of employment, but that she had to leave the job to have foot surgery. She briefly returned to the nursing job on December 13, 1987, but again left because of more foot problems.
Claimant testified that at the time of the hearing she was still suffering from muscle spasms in different parts of her body, an abnormal sense of smell, loss of short-term memory, dizziness, mental disorientation, skin lesions, and allergies to petroleum products, formaldehyde, and phenol. Claimant stated that she did not experience any of these symptoms prior to her job with the employer. Drs. Visti and Konetzki, in whose care claimant remained at the time of the hearing, testified that she was totally disabled as a result of her industrial exposure to organophosphates. William Orlando, a rehabilitation counselor, also testified that he evaluated claimant's case and that she was not employable due to the disabilities resulting from such exposure.
With regard to her claim for attendant care benefits, claimant stated that she cannot cook because she is afraid she might leave one of the burners on and start a fire; she cannot drive because she sometimes becomes disoriented, weaves all over the road, and cannot remember her way home; and she cannot do much of the housecleaning because of her allergies to the chemicals in most cleaning products. Claimant's husband testified to substantially the same facts on this subject. He further stated that prior to claimant's exposure to the paramite, she was mentally sharp and at one time was running three businesses, whereas now he has to make a list with her every evening of the things she has to do the next day. Valerie Denner, a registered nurse and home health care consultant whom the judge accepted as an expert in the area of attendant health care, testified that claimant needs someone to do general household chores that involve chemicals and any activity that requires driving an automobile.
In the final order, the judge found that claimant sustained a compensable injury on April 7, 1987, from exposure to organophosphates. He ordered the employer and carrier to pay certain past due medical expenses, and provide claimant treatment at a detoxification clinic in accordance with the recommendations of Dr. Konetzki. With regard to the claimant's claim for TTD benefits from July 18, 1987, the date the employer and carrier ceased paying such benefits, the Judge stated:
11. I find that the Claimant, based on the medical evidence presented, continues to be temporarily totally disabled and should be entitled to temporary total disability benefits from July 18, 1987 to the date of her employment with [Upjohn Nursing] which began on October 23, 1987 and continued until November 3, 1987. According to the Claimant's testimony, she was performing nursing home services during that time but quit because of the need for foot surgery on November 6, 1987, a condition which was unrelated to her industrial accident. I further find that based upon the Claimant's testimony she was capable of performing that type of work, but for the foot surgery could have continued to be doing the same and thus any loss of income at the present time is attributable thereto.
*993 The judge denied claimant attendant care benefits, finding that the services that are being furnished by family members are those that should ordinarily be furnished by family members. The judge did, however, order the employer and carrier to pay claimant transportation expenses incurred in obtaining the remedial treatment they are required to furnish.

II.
We agree with claimant's first point that the judge erred in denying her claim for TTD benefits from the date she ceased her employment with Upjohn Nursing based on the rationale that she was able to perform that job for ten days and had resigned for a reason not related to her industrial accident, i.e., her foot condition. There is competent substantial evidence in the record to support the judge's finding that claimant was temporarily totally disabled as a result of her industrial exposure to organophosphates, and that she continued to be temporarily totally disabled at the time of the hearing. All of the medical evidence supports a finding of total disability due to her exposure to organophosphates, but the evidence does not relate claimant's continuing total disability to her non-work-related foot problems. In fact, the record contains no medical evidence whatsoever attributing the extent of claimant's current disability to her foot problems.[1] Because the record contains no medical evidence to support a finding that claimant's disability is the sole result of her foot problems, and because the uncontroverted medical evidence indicates that her continuing disability is the result of her industrial exposure, there is no competent substantial evidence in the record to support the denial of TTD benefits after the last date of claimant's employment with Upjohn Nursing. We reverse this ruling and remand with directions to order the employer and carrier to pay such benefits.
We reject, however, the claimant's argument that the judge should have awarded her temporary partial disability benefits during the period of her employment with Upjohn Nursing. This ruling was not erroneous because the claimant did not present any evidence to prove the amount or extent of wage loss she may have suffered during this period. We further find no error in the judge's failure to award claimant permanent total disability benefits because the record contains no medical evidence that she has reached maximum medical improvement. See Morton Plant Hospital, Inc. v. Craft, 547 So.2d 1024 (Fla. 1st DCA 1989) (Absent medical testimony that the claimant has or has not reached MMI, the judge is unable to address the issue of permanent disability.).

III.
We affirm on the final issue raised by claimant, i.e., whether the judge erred in denying her claim for attendant care benefits. Section 440.13(2)(a), Florida Statutes (1989), authorizes attendant care benefits in the following language:
[T]he employer shall furnish to the employee such medically necessary remedial *994 treatment, care, and attendance by a health care provider... .
This court has interpreted section 440.13(2)(a) as authorizing compensation for attendant care services provided by a family member where such services go beyond ordinary household duties. Sealey Mattress Co. v. Gause, 466 So.2d 399 (Fla. 1st DCA 1985). Examples of extraordinary services that can constitute "attendant care" are bathing, dressing, administering medication, and assisting with sanitary functions. 466 So.2d at 400.
Claimant argues that because her husband has to administer medication to her, she is entitled to attendant care benefits for this service. Claimant's husband testified, however, that claimant is able to take her medications by herself and keeps track of when she needs to take them without his continuous supervision. The record contains competent, substantial evidence to support the denial of attendant care benefits on this ground.
Claimant next argues that she is entitled to attendant care benefits because her family must provide her with transportation. The record supports claimant's assertion that she is now unable to drive.[2] We do not, however, read the language in section 440.13(2)(a) that attendant care services must be medically necessary to mean that attendant care benefits are authorized to a claimant for transportation services for various and sundry purposes. Supportive services such as driving the claimant to the store and other places, other than transportation necessary for medical treatment pursuant to section 440.13(6),[3] constitute quality of life activities indemnified under disability compensation benefits rather than attendant care service that is medically necessary. We therefore reject the claimant's argument that Mills v. Walden-Sparkman, Inc., 493 So.2d 64 (Fla. 1st DCA 1986), supports her claim for attendant care because it states that "[w]hen transportation is provided to a claimant beyond what would normally be provided by a family member on a gratuitous basis, attendant care benefits should be awarded." That case holds only that section 440.13(6) entitles a claimant to reimbursement of the reasonable actual cost of transportation for authorized medical treatment. Mills does not construe and apply the attendant care provision, section 440.13(2), and the language in the opinion that transportation expenses incurred transporting a claimant to obtain medical treatment are recoverable as an attendant care service, while admittedly ambiguous, must necessarily be read in context and limited to the transportation costs authorized for medical treatment pursuant to section 440.13(6) actually involved in the case.
For these reasons we affirm the denial of attendant care benefits.
AFFIRMED in part, REVERSED in part, and REMANDED.
SHIVERS and MINER, JJ., concur.
NOTES
[1] The employer and carrier presented no expert testimony to establish that claimant's continuing foot problem is the sole cause of the disability preventing her from engaging in any employment. Rather, the employer and carrier argue that the claimant's testimony regarding her foot condition is sufficient as a matter of law to support the judge's ruling that her continuing total disability is solely related to her foot condition, referring to pages 87-96 of the hearing transcript where claimant described the various surgical procedures performed on her right foot between November 1987 and December 1989 and their effect on her. The attorney for the employer and carrier asked the claimant whether her foot doctor told her she was unable to work because of her foot condition, but the judge correctly sustained an objection to that question on the ground that it sought hearsay medical testimony. When asked whether she felt she was unable to work because of the foot problems, claimant stated, "My feet are a problem. And also my mental ability. And allergies. And with all the skin sores I have, I'd have a hard time being hired by anybody." This lay testimony does not constitute a reasonable basis for the judge to reject the uncontroverted medical testimony that claimant's current total disability is causally related to the insecticide poisoning. See Thomas v. Salvation Army, 562 So.2d 746 (Fla. 1st DCA 1990). The employer and carrier presented no evidence establishing that claimant's foot condition alone prevented her from performing any employment, including sedentary work.
[2] Dr. Konetzki's testimony is most persuasive with regard to claimant's need for others to drive her automobile. He stated:

On some days she doesn't dare take the car out, she will get to an intersection and have a lot of difficulty in figuring out when to start out into traffic. She has trouble judging the intervals between cars and the rate of speed that they are going.
[3] The judge specifically awarded claimant transportation expenses incidental to her remedial treatment as authorized by section 440.13(6).