605 So.2d 885 (1992)
TIMOTHY BOWSER CONSTRUCTION COMPANY and Cigna Insurance Company, Appellants,
v.
Vincent KOWALSKI and Division of Workers' Compensation, Appellees.
No. 91-3230.
District Court of Appeal of Florida, First District.
August 28, 1992.
*886 H. George Kagan and H. Jack Miller, of Miller, Kagan & Chait, P.A., Deerfield Beach, for appellants.
Michael H. Stauder, North Palm Beach, for appellees.
SHIVERS, Judge.
The employer/carrier (e/c) appeal from a final order of the Judge of Compensation Claims (JCC) requiring the e/c to provide transportation and housing, and awarding attendant-care benefits to Claimant's parents. Claimant Kowalski, age 20, was struck by lightning in June 1989 while performing carpentry in the course and scope of employment. He sustained severe brain damage and requires around-the-clock care. We affirm that portion of the order requiring the e/c to provide transportation to and from all medically related appointments, but remand for the JCC to specify what transportation costs are reasonably medically necessary, consistent with our discussion herein and with our holdings in Marlowe v. Dogs Only Grooming, 589 So.2d 990 (Fla. 1st DCA 1991) and State, Hendry County Correctional Inst., Div. of Risk Managem't v. Hughes, 412 So.2d 922 (Fla. 1st DCA 1982). We affirm the award of housing for Claimant, but reverse that portion of the award requiring the e/c to provide a second bedroom and bathroom for Claimant's parents. See Prestressed Decking Corp. v. Medrano, 556 So.2d 406, 408-09 (Fla. 1st DCA 1989) (award of counseling for the claimant's family, although desirable and helpful to family, was beyond deputy's authority under section 440.13(2)(a), Florida Statutes, governing medical benefits "to the employee"). The attendant-care awards are affirmed.

TRANSPORTATION
Several provisions of the award of transportation are at issue on appeal. First, the e/c are required to provide Claimant with transportation that includes provisions for a wheelchair lift and inside storage device, such as a Bruno Lift or similar device. Second, the vehicle providing transportation must contain four doors, be equipped with child-proof locks, and have sufficient room for Claimant to be seated in the rear seat. The order specifically provided the vehicle "should be a large four door sedan or a traditional full size station wagon." Third, in addition to provisions for transportation for all medically related appointments, the e/c are to provide "transportation for the various outings that are reasonably medically necessary for the employee." The JCC interpreted this provision to include visits with friends; trips to the grocery store, the mall, the beach, the family's homes, and the movies; as well as other activities that provide Claimant "with socialization and community reintegration activities as described by Dr. Lichtblau in his testimony."
We find competent substantial evidence in the record to support the award of transportation providing a wheelchair lift and inside storage device. Likewise, we affirm the provision of a large four-door sedan or a full-size station wagon with child-proof locks and with sufficient room for safe accommodation of Claimant, who *887 is a large man. See section 440.13(2)(a), Florida Statutes (Supp. 1988). We understand the order to mean the e/c will furnish vehicular transportation meeting the above criteria, and will retain the option of making decisions as to ownership of the vehicle. See Aino's Custom Slip Covers v. DeLucia, 533 So.2d 862, 865 (1st DCA 1988), rev. den., 544 So.2d 199 (Fla. 1989); Temps & Co. Services v. Cremeens, 597 So.2d 394, 398 (Fla. 1st DCA 1992).
The Legislature enacted statutory law governing the issue of which transportation services relate to medical treatment. See section 440.13(2)(a) and (5), Florida Statutes (Supp. 1988), effective October 1, 1988; Hughes, 412 So.2d at 923 n. 3 (e/c's duties and claimant's entitlement to benefits are fixed by statute in effect on date of accident). Subsection (2)(a) requires the e/c to furnish to a claimant "such medically necessary remedial treatment, care, and attendance by a health care provider ... including ... medically necessary apparatus."
The claimant in Marlowe, 589 So.2d at 990, who was unable to drive, asserted that subsection (2)(a) entitled her to attendant care benefits because her family was required to provide her with transportation. We noted in that opinion:
We do not, however, read the language in section 440.13(2)(a) that attendant care services must be medically necessary to mean that attendant care benefits are authorized to a claimant for transportation services for various and sundry purposes. Supportive services such as driving the claimant to the store and other places, other than transportation necessary for medical treatment pursuant to section 440.13(6) [previously numbered 440.13(5)], constitute quality of life activities indemnified under disability compensation benefits rather than attendant care service that is medically necessary.
Id. at 994. In the case sub judice, the JCC relied on the testimony of Dr. Lichtblau, who opined it is reasonably medically necessary for Claimant to engage in any activity in which a man of Claimant's age would normally participate. Lichtblau testified that social outings such as those activities enumerated above and in the final order relate to Claimant's need for socialization and community reintegration. Marlowe indicates the Legislature did not intend the scope of section 440.13(2)(a), Florida Statutes (Supp. 1988), to encompass benefits to Claimant for transportation services relating to visits such as to the beach, the grocery store, the movies, and the mall.
Section 440.13(5), Florida Statutes (Supp. 1988), provides:
An injured employee is entitled, as part of his remedial treatment, care, and attendance, to reasonable actual cost of transportation to and from the doctor's office, hospital, or other place of treatment by the most economical means of transportation available and suitable in the individual case.
Claimant alternatively defends the transportation award under this statutory provision, relying on Dr. Lichtblau's opinion that the social outings are reasonably medically necessary. We have the same vantage point as the JCC did in evaluating the deposition testimony of Dr. Lichtblau. McCabe v. Bechtel Power Corp., 510 So.2d 1056, 1059 (Fla. 1st DCA 1987). In Broadfoot v. Albert Hugo Ass'n, Inc., 478 So.2d 863, 866 (Fla. 1st DCA 1985), we held that otherwise sufficient testimony is not rendered unsatisfactory merely because the doctor testifying does not use "magic words" such as "reasonable medical probability." See Castro v. Florida Juice Div., 400 So.2d 1280, 1282 (1st DCA 1981), rev. den., 412 So.2d 465 (Fla. 1982). The corollary of that holding is demonstrated in the present case, where the JCC relied on Dr. Lichtblau's opinion that recreational and social outings are a necessary part of Claimant's treatment. See Delong v. 3015 West Corp., 558 So.2d 108 (Fla. 1st DCA 1990) (affirming JCC's finding that lawn care service was not a medical necessity, despite physician's testimony that it was "medically necessary" for someone other than the claimant to mow the lawn). Dr. Lichtblau found "reasonably medically necessary" the very types of "transportation services for various and sundry purposes" such as "quality *888 of life activities" for which benefits and reimbursement were denied in Marlowe.
Irrespective of how salutary and beneficial such social and recreational activities might be to all persons, not just to Claimant, we are compelled by the plain language of section 440.13(2)(a) and (5), Florida Statutes (Supp. 1988), to reverse that portion of the transportation award because the enumerated activities do not relate to "the reasonable actual cost of transportation for authorized medical treatment." Marlowe, 589 So.2d at 994; Medrano, 556 So.2d at 406; Mills v. Walden-Sparkman, Inc., 493 So.2d 64 (Fla. 1st DCA 1986); Hughes, 412 So.2d at 923 (Claimant's travel to parent's funeral was noncompensable transportation cost because undertaken for reasons extraneous to his industrial injuries and no different, except in degree, from travel relating to "any number of other misfortunes which we all must suffer, and which none of us may control.") On remand, the JCC is to specify what transportation costs are reasonably medically necessary, consistent with this opinion and the decisions cited herein. Likewise, the JCC is to amend the award of mileage payments to the parents for use of their personal vehicle, in light of what is determined to be reasonably medically necessary. Mobley v. Jack & Son Plumbing, 170 So.2d 41, 47-48 (Fla. 1964); Polk County Bd. of Comm'rs v. Varnado, 576 So.2d 833, 840-41 (Fla. 1st DCA 1991).

HOUSING
The e/c authorized claimant to be admitted to the Craig Institute in Denver, Colorado, in response to his family's belief Claimant would receive more effective care there than in his hometown in Florida. Claimant and his family intend to live in Denver, where he will attend St. Anthony's Adult Day Care Program under the terms of the parties' pretrial stipulation. The JCC ordered the e/c to provide Denver-area "handicap/wheelchair and head injury accessible housing in accordance with the specifications agreed upon by the parties as set forth by Craig Hospital and in accordance with the recommendations of Dr. Weintraub and Dr. Lichtblau. Said housing shall provide a minimum of two bedrooms and two bathrooms and shall be of sufficient size to accommodate the claimant and claimant's parents."
The e/c acknowledge their duty to provide claimant with "an accessible living environment." However, the e/c maintain that the JCC erred in determining a two-bedroom, two-bathroom home is a medical necessity for which the e/c must bear total responsibility. We agree, finding such an award is beyond the authority of the JCC under the statutory language governing an award of "medical apparatus." See section 440.13(2)(a), Florida Statutes (Supp. 1988); Diamond R. Fertilizer v. Davis, 567 So.2d 451 (Fla. 1st DCA 1990); DeLucia, 533 So.2d at 862. Competent substantial evidence supports the award of wheelchair and brain-impaired accessible housing.
The order requires the housing to be of sufficient size to accommodate not only Claimant, but also his parents, "who are currently providing 24 hour a day attendant care." The JCC apparently relied on Dr. Lichtblau's testimony that because of the nature of Claimant's brain injury, and the very positive and caring supportive relationship established between the parents and Claimant, which a non-familial caregiver could not provide, it is medically necessary for the parents to live with him. While the record amply demonstrates the family's extraordinary emotional commitment and expenditure of time in caring for Claimant, we are constrained by the statutory language governing medically necessary services and other benefits "to the employee." See Medrano, 556 So.2d at 409 & n. 2. The law of Florida, and the JCC's order itself, entitle the parents to compensation in other respects, discussed below. We find our opinion in Doctors Hospital of Lake Worth v. Robinson, 411 So.2d 958 (Fla. 1st DCA 1982), is factually distinguishable (affirming award of child care services to relieve tension and pressure from caring for four-year-old child, the stress from which had worsened the recuperating claimant's severe depressive condition).
*889 Claimant urges affirmance of the housing award based on Gilley Trucking Co. v. Morrell, 591 So.2d 302 (Fla. 1st DCA 1991). In that case, the claimant sustained a compensable accident and was rendered a permanent quadriplegic, thereby making his former residence unsuitable for him. The e/c offered to buy a lot and place on it an Enabler II mobile home designed for wheelchair-bound individuals. The JCC awarded the claimant with a conventional home designed by an architect. We affirmed, based on competent substantial evidence showing the housing awarded was medically necessary for the particular claimant, "given the unique facts presented in this case." Id. at 303. Morrell is consistent with the e/c's assertion that the housing award must meet the requirements of what is medically necessary for a particular claimant, and that section 440.13(2)(a), Florida Statutes (Supp. 1988), does not encompass the other requirements of a claimant's family unrelated to the injured claimant's treatment or recovery. In Stables and CNA Ins. v. Rivers, 562 So.2d 784 (Fla. 1st DCA 1990), we reversed an award that had denied a claim for psychological evaluations and counseling for the claimant's husband and children. The JCC had determined such an award was not an authorized medical benefit under section 440.13, Florida Statutes, because it was not a service rendered directly to the injured employee. We stated:
[A] section 440.13 medical benefit may include services to the claimant's family, such as child care, when it is necessary to facilitate the injured employee's treatment and recovery... . [T]he pertinent inquiry should be the injured employee's medical need for, rather than the nature of, these services.
Rivers, 562 So.2d at 786. We find Rivers is distinguishable because a second bedroom and bathroom are not medically necessary for Claimant. Additionally, we note the statute does not permit the JCC to rely on testimony indicating a second bedroom and bathroom for the parents or for other attendant care persons would be merely beneficial or helpful or more convenient. Medrano. The preference of a medical witness does not meet the statutory requirement of medical necessity. DeLucia, 533 So.2d at 865.
Accordingly, we affirm the award of housing to Claimant, but reverse that portion of the award requiring the e/c to provide a second bedroom and bathroom for Claimant's parents. This award is not intended to preclude the parents from arranging for their own accommodations in Claimant's residence. Rather, the pertinent statutory provisions simply do not authorize the JCC to require the e/c to bear the cost of providing the parents with such accommodations. See Cremeens, 597 So.2d at 396-97.

ATTENDANT CARE BENEFITS
Section 440.13(2)(e)(2), Florida Statutes (Supp. 1988), the law in effect at the time of the accident, provides:
(e) The value of nonprofessional attendant or custodial care provided by a family member shall be determined as follows:
* * * * * *
2. If the family member is employed and elects to leave that employment to provide attendant or custodial care, the per hour value of that care shall be at the per hour value of such family member's former employment, not to exceed the per hour value of such care available in the community at large.
Compensation for attendant care provided after September 30, 1989, is subject to the following additional limitation enacted in the 1989 amendment to subsection (2)(e)(2): "In no event shall a family member providing nonprofessional attendant or custodial care pursuant to this paragraph be compensated for more than 12 hours per day." See Artigas v. Winn Dixie Stores, Inc., 578 So.2d 356, 358 (Fla. 1st DCA 1991). The current version of that provision retains the 12-hour cap on compensation for attendant care but permits the 12 hours of care to be provided by "a family member or a combination of family members." See section 440.13(2)(h)(2), Florida Statutes (1991).
*890 Because of the difference between the per hour values of the parents' former employment, Claimant's mother was authorized to provide attendant care for six hours per day, seven days a week, at the hourly rate of $7.80, while the father was compensated for the same length of time at the hourly rate of $11.20. The plain language of the statute allows a family member to elect to leave other employment to provide attendant or custodial care, as both parents did here. The e/c maintain the record does not support a conclusion that it was necessary for both parents to cease all other remunerative employment so that each parent could provide six hours of daily compensated attendant care to Claimant. We find competent substantial evidence to support the award of attendant care benefits to the parents and affirm. The record amply demonstrates that both parents typically have provided care to Claimant for much longer periods of time than the six hours daily for which each received compensation. We also affirm the award of attendant care for Claimant by a professional trained in handling head-injury patients.

PAST EMERGENCY ATTENDANT CARE
We affirm the award of past attendant care benefits to Claimant's mother because competent substantial evidence was offered to show she provided the care under unanticipated emergency conditions. Willard Kaufman Co. v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982); Square G. Constr. Co. v. Grace, 412 So.2d 397, 399 (Fla. 1st DCA 1982).
We affirm the award of moving and transportation expenses necessary for the family and Claimant to relocate in Colorado.
AFFIRMED in part, and REVERSED and REMANDED in part, with instructions.
WIGGINTON and BARFIELD, JJ., concur.