733 So.2d 1097 (1999)
Charles Michael BUTTS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-546.
District Court of Appeal of Florida, First District.
May 19, 1999.
*1098 William J. Sheppard and D. Gray Thomas, of Sheppard and White, P.A., Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General, and Sherri Rollison, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, J.
Appellant, Charles Michael Butts, seeks review of his conviction and sentence for second degree murder. Appellant challenges two evidentiary rulings by the trial court and also urges that the evidence was insufficient to sustain a conviction. Although the evidence in this case, viewed in a light most favorable to the prosecution, was sufficient to withstand a motion for judgment of acquittal, appellant is entitled to a new trial because the trial court impermissibly infringed upon his right to cross examine one of the State's expert witnesses.
The murder charge in this case arose from the death of appellant's girlfriend and roommate, Glorea Barnes. On November 27, 1996, appellant and the victim lived together in Jacksonville. On that day, Glorea Barnes' mother, Vera Barnes, went to appellant's house to pick up her daughter to take her to work. When Vera Barnes entered, she saw the victim lying on the floor with her head against the bottom of a night stand. Glorea was breathing but was unresponsive. She later died in a local hospital.
In statements to the police, appellant said he found the victim on the bedroom floor at around 6:45 or 7:00 a.m. He saw blood spots on her shirt, a red spot on her cheek, and dried blood on the back of her head. Appellant also described blood on the sheets, pillow and blanket on the bed near where the victim was found but was unable to offer any explanation of why a bloodstain appeared in another bedroom of the house.
During its case in chief, the State presented the testimony of a Duval County Jail inmate, Charles Kohn. Kohn testified that appellant, while also at the Duval County Jail, told him about a fight between appellant and Glorea Barnes. According to Kohn, appellant said he was *1099 upset because Glorea sold a television set to buy drugs. Kohn testified that appellant admitted that Glorea suffered a fractured skull during the fight.
Also during the case in chief, the State presented testimony of three witnesses pursuant to Williams v. State, 110 So.2d 654 (Fla.1959), and section 90.404(2)(a), Florida Statutes (1995). These witnesses testified that, on prior occasions, appellant had struck or slapped Glorea Barnes. After a motion hearing, the trial court overruled objections to this testimony. Defense counsel did not renew the objections before the trial testimony of these witnesses.
For evidence of the cause of death, the State called Dr. Margarita Arruza, the medical examiner who performed an autopsy on the victim. Dr. Arruza described a skull fracture and classified the manner of death as "homicidal." According to Dr. Arruza, the victim's injury showed multiple points of impact and would not be explainable by a single fall. The doctor did acknowledge, however, that even had the injury resulting in the skull fracture occurred first, there existed the possibility (although unlikely) that the victim could have retained sufficient consciousness to have walked around and potentially fallen again before losing consciousness for the last time. The trial court limited defense counsel's cross examination of Dr. Arruza regarding alternative scenarios for the fatal injury.
In the defense case, appellant called Dr. Stephen Dunton, a forensic pathologist. In Dr. Dunton's opinion, the victim's skull fracture was consistent with her having fallen and struck her head on a corner of the night stand. Dr. Dunton also believed that the victim could have remained conscious for a time after suffering that injury. He classified the death as "undetermined" rather than "homicide" because, in his opinion, other scenarios existed that could be consistent with observations at the hospital and on autopsy. Dr. Dunton believed the injuries could have been the result of an accidental fall.
Appellant testified in his own defense. He described the victim's history of drinking and cocaine use. The victim used crack cocaine frequently and had hallucinations and other adverse reactions. According to appellant, the victim would on occasion leave the house through a bedroom window in order to get outside to buy drugs. Appellant testified that on the morning in question he found the victim on the bedroom floor unconscious. Her jeans were pulled down around her knees and she had a urine-like smell about her. He was changing clothes to take her to the hospital when Vera Barnes arrived at the house. Appellant and Vera Barnes together dressed the victim and wrapped her in a blanket, and appellant drove her to the hospital. Appellant further testified that on the same day a television was missing from the house, and he theorized that the victim must have sold it the previous night in order to purchase crack. He admitted that he had met Charles Kohn in jail, but said that he had never talked to Kohn about this case.
The trial court did not err by admitting testimony of appellant's prior bad acts concerning the victim. The testimony was relevant and admissible to rebut the defense theme that the victim's death was accidental. See Ledlow v. State, 453 So.2d 892 (Fla. 1st DCA 1984). Moreover, appellant failed to renew his objection to the similar fact testimony at trial. See Correll v. State, 523 So.2d 562, 566 (Fla. 1988) ("Even when a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review."); see also Lindsey v. State, 636 So.2d 1327 (Fla.1994); Morrow v. State, 717 So.2d 93 (Fla. 1st DCA 1998).
This case must be retried, however, because the trial court applied the wrong evidentiary standard to certain inquiries made by appellant on cross examination of *1100 Dr. Arruza and, in so doing, impermissibly limited appellant's right to cross examine an adverse witness. Appellant's argument here focuses upon the following bit of testimony:
Q. [Mr. Eler, defense counsel] Okay. But back to my question though, basically, you cannot exclude the possibility, Doctor, can you, that she fell or this trauma occurred and she wasn't immediately rendered unconscious she got up walked around and had a second fall?
MS. COREY-LEE (Assistant State Attorney): I object to the form of the question in that it used the word possibility. I think he has to use it in the term of the reasonable medical certainty.
THE COURT: Sustained.
BY MR. ELER:
Q. Based on a reasonable degree of medical certainty you cannot say that didn't happen to Glorea Barnes on November 27th?
A. I cannot excludecan you repeat the question?
Q. Yes. Based on a reasonable degree of medical certainty you cannot exclude from the range of scenarios that could have occurred to sustained a skull fracture which did not render her unconscious and walked around and fell again?
A. You see, every time you put that word exclude, to me means well, is there a remote possibility that something can happen and it's like, yes. I mean what is the more likely scenario, that she didn't walk. That is the more likely scenario. Is it possible that she did something different? It is a possibility, but it's not likely.
Q. But of course you can't sequence any of these injuries, can you?
A. No, I cannot sequence these injuries.
Q. Okay.
THE COURT: Excuse me, Doctor, that's why we don't deal with possibilities. We deal within reasonable medical probability, not possibility, so try to frame the response in that light.
THE WITNESS: But then he gives me an exclusion.
THE COURT: Within reasonable medical probability.
BY MR. ELER:
Q. Okay.
A. Okay. So I am going to answer the Judge. Excluding within reasonable medical probability or possibility, it's legal terms, can Ican I excludeyes. I will say that, yes, I can excludeshe does have a severe head injury, severe bleeding inside the brain and, no, you do not expect her to be walking around after sustaining that injury.
Q. Sojust so I understand your testimony, okay, you can exclude that possibility that she sustained this skull fracture and that did not render her unconscious. Is that what you are saying?
MS. COREY-LEE: I object to the form of that question, Judge.
THE COURT: Mr. Eler, you keep wanting to throw in possibilities. We are not dealing with possibilities. We are dealing with probability.
MR. ELER: I would like her to repeat what she said because she testified she could exclude that possibility that Ms. Barnes fell, cracked the skull and got up again. I thought that's what she said.
MS. COREY-LEE: Except she didn't use the word possibility and Mr. Eler keeps using it.
THE COURT: Mr. Eler uses possibilities.
MR. ELER: I apologize, Your Honor.
BY MR. ELER:
Q. Can you exclude that scenario?
THE COURT: Within reasonable medical probability. You can answer the question. Please answer.
THE WITNESS: Can I exclude her from walking around? Yes. I can exclude her. She is not walking around.
*1101 Following repeated limitations of medical testimony concerning the cause of death to "reasonable medical probability," the doctor essentially stated that Glorea Barnes could not have walked around after the initial skull fracture.
Contrary to the view taken by the trial court, neither the prosecution, nor the defense, in a murder case is required to limit testimony concerning cause of death to "reasonable medical certainty." As a threshold for admissibility, expert opinion testimony must be relevant, see section 90.401, Florida Statutes, and must meet the standard generally applied to scientific, technical, or other specialized knowledge under section 90.702, Florida Statutes. It is nevertheless the case, however, that "expert medical testimony as to the cause of death need not be stated with reasonable certainty in a homicide prosecution and is competent if the expert can show that, in his opinion, the occurrence could cause death or that the occurrence might have or probably did cause death." Buenoano v. State, 527 So.2d 194, 197-198 (Fla.1988). This rule of admissibility has all the more positive force when applied to the defendant's cross examination of a state witness in a murder prosecution. One of the purposes of cross examination of an expert is to suggest the existence of a hypothesis contrary to that adopted by the expert.
A more thorough exposition of the rule concerning admissibility of expert opinion testimony on causation in a homicide prosecution appears in Delap v. State, 440 So.2d 1242 (Fla.1983). The defendant in Delap argued that a prosecution medical expert could only present opinion testimony regarding cause of death when such testimony was expressed in terms of reasonable medical certainty. The supreme court, however, rejected this argument and stated the applicable rule of competence:
Such testimony is competent if the expert can show that, in his opinion, the occurrence could cause death or that the occurrence might have or probably did cause death.
* * *
To be admissible, a medical expert's opinion as to the cause of an injury or death does not have to be expressed in terms of reasonable medical certainty. Such evidence is admissible, but the weight to be given it is a matter to be determined by the jury.
Id. at 1253 (citations omitted).
If testimony of the type discussed by the court in Buenoano and Delap is admissible for the prosecution during the case in chief against a murder defendant, then the same type of testimony could not possibly be inadmissible during cross examination of the State's expert. The concession sought by the defendant during cross examination of Dr. Arruza did not literally involve an opinion on the cause of death. Instead what appellant sought, as is quite typical in cross examination, was to demonstrate that the State's expert, having stated her opinion, could not exclude the possibility that the defense hypothesis of innocence might have applied. Following the reasoning of the trial court, a defendant, when seeking to rebut the hypothesis of guilt relied upon by the State in a circumstantial evidence case, would be required to present testimony that the defense hypothesis of innocence is not merely reasonable, but is actually more likely than not. Such would be inconsistent with the standard of reasonable doubt that applies in criminal cases.
In a somewhat sparse opinion, the court, in State v. Manno, acknowledged implicitly the principle urged by appellant here. 550 So.2d 31 (Fla. 3d DCA 1989). In Manno, the jury convicted the defendant of vehicular homicide. Manno moved for a new trial alleging that the trial court erred in failing to instruct the jury on the charge of reckless driving as requested by the defense. The State conceded that reckless driving is a necessarily lesser included offense of vehicular homicide, but nevertheless argued that the instruction was not *1102 required because the cause of death was undisputed. The appellate court affirmed a grant of new trial pointing out that defense counsel's cross examination of the medical examiner "was positively directed at the possibility that the victim's death was caused by hospital doctors' negligent treatment of the victim." Id. The appellate court then observed that a defendant is entitled to instructions on a theory of defense "where it is supported by the evidence." Id. For purposes of the present case, the teaching of Manno is that cross examination concerning a possible cause of death, other than that alleged by the prosecution, is a viable theory of defense.
We have not overlooked the fact that the defendant was able to broach the subject of possible explanations of the death at other points during Dr. Arruza's testimony and also during direct examination of the defense witness, Dr. Dunton. This did not rectify the court's error. On at least two occasions, the trial court went beyond merely upholding the objection, and pointed out to the jury what, in the trial court's view, was the fallacious approach taken by the defense. At one point the trial judge explained to Dr. Arruza: "[W]e don't deal with possibilities. We deal with medical probability, not possibility, so try to frame the response in that light." At another point, the trial court rebuked counsel: "Mr. Eler, you keep wanting to throw in possibilities. We are not dealing with possibilities. We are dealing with probability." In effect, then, the jury was instructed that it should ignore any testimony concerning possible causes of death other than that theorized by the prosecution's expert.
REVERSED and REMANDED for a new trial.
ERVIN, and LAWRENCE, JJ., CONCUR.