877 So.2d 742 (2004)
Barnett SOCOLOW, Appellant,
v.
FLANIGANS ENTERPRISES and Protegrity Services, Appellees.
No. 1D03-1378.
District Court of Appeal of Florida, First District.
May 18, 2004.
Rehearing Denied July 28, 2004.
*743 Edward Schroll, Miami, for Appellant.
Janet Poluse of Matusek, McKnight, Poluse & Cangro, P.A., St. Petersburg, for Appellees.
BROWNING, J.
Appellant seeks review of a final order denying his claim for home attendant care from August 1, 1988, through January 18, 2002; granting his claim for home care since January 18, 2002; and ordering compensation at the federal minimum wage for 61 hours a week of care. For the reasons below, we affirm the order to the extent that it grants compensation, and reverse in part the order to the extent that it denies the claim for compensation.
Appellant was injured at work on September 20, 1979, and again on May 14, 1980. To treat these injuries, he underwent spinal surgery on December 13, 1982. In 1986, Appellant was found by a JCC to be permanently and totally disabled. This Court affirmed that order per curiam. See Flanigan's Enterprises v. Socolow, 505 So.2d 1343 (Fla. 1st DCA 1987). In 1999, Appellant filed a petition for benefits seeking medical expenses for continuing home attendant care from August 1, 1988, costs, and attorney's fees.
To uphold an order granting or denying workers' compensation benefits, a reviewing tribunal need only determine that the record contains competent substantial evidence supporting the JCC's conclusion; the JCC is not required to explain why he or she disregarded contradictory evidence. Chavarria v. Selugal Clothing, Inc., et al., 840 So.2d 1071 (Fla. 1st DCA 2003) (en banc). However, when the question presented in review of a workers' compensation appeal is one of law, review is de novo. Amato v. Winn Dixie Stores, 810 So.2d 979, 981 (Fla. 1st DCA 2002). Here, the record contains competent substantial evidence to support most, but not all, of the JCC's findings, and case law supports the JCC's ruling only to a certain extent. Ultimately, the JCC's award of benefits from January 18, 2002, is proper, but the JCC also should have awarded compensation for attendant care rendered from January 1997 through May 1998 and should reconsider an award for care rendered from August through October 1988.
Appellant began living with his son, Sam, and Sam's then-fiancee, Kelli, in August 1988. In October 1988, Sam and Kelli wed. Thereafter, Appellant sometimes lived with Sam and Kelli, sometimes lived *744 alone and accepted their assistance, and, for a short time, lived alone too far away for Sam and Kelli to look after him. The JCC found that Kelli had helped cook Appellant's meals, clean the home, and wash Appellant's laundry since August 1988, and that the care given from August 1988 through January 18, 2002, is not compensable because it "constitutes quality of life activity, household services, and gratuitous family assistance."
The JCC is partially correct as to the law. Housekeeping, transportation other than to a doctor, and other normal household duties that reflect on quality of life rather than medical necessity are generally considered gratuitous and not compensable. See, e.g., Montgomery Ward v. Lovell, 652 So.2d 509, 511 (Fla. 1st DCA 1995); Marlowe v. Dogs Only Grooming, 589 So.2d 990 (Fla. 1st DCA 1991); Sealey Mattress Co. v. Gause, 466 So.2d 399 (Fla. 1st DCA 1985). Care is compensable only if it is "medically necessary." § 440.13(2)(b), Fla. Stat. (1997). Generally, attendant care considered medically necessary includes only bathing, dressing, administering medication, and assisting with sanitary functions. See, e.g., Lovell, 652 So.2d at 511.
Kelli provided cooking, cleaning, and laundry services to Appellant from August 1988 to October 1988, before she married his son. The applicable statute for awarding compensation for attendant care is the statute in effect at the time the compensable care was given. Walt Disney World Co. v. McCrea, 754 So.2d 196, 197 n. 2 (Fla. 1st DCA 2000). In 1988, section 440.13 specified that family members could not be compensated for attendant care services that would normally be provided by family members gratuitously. § 440.13(2)(d), Fla. Stat. (Supp.1988). Kelli became Appellant's family member, as defined by section 440.13, only after her marriage to Sam. See § 440.13(2)(e), Fla. Stat. (Supp.1988); Lemus v. Ocala Star Banner, 672 So.2d 76 (Fla. 1st DCA 1996) (upholding award of compensation at federal minimum wage to claimant's adult son who provided assistant care as a family member). Cf. Walt Disney World Co. v. McCrea, 754 So.2d 196, 198 (Fla. 1st DCA 2000) (noting that the definition of "child" provided in section 440.02(5) applies to the provision of death benefits only).
Because Kelli was not a family member during the first two months of care, she is entitled to compensation for any compensable care she provided. See DeLong v. 3015 West Corp., 491 So.2d 1306 (Fla. 1st DCA 1986) (holding that care provided by claimant's son's girlfriend was compensable). It is true that housekeeping services historically have not been compensable as attendant care. Lovell, 652 So.2d at 510-11. However, the JCC did not explain whether his denial of compensation was based on a finding that Kelli's services consisted only of housekeeping duties, as opposed to "gratuitous family assistance." Therefore, we remand to the JCC for a determination of whether any services provided by Kelli before she was married are compensable, and an appropriate award of compensation if justified.
We also remand for an appropriate award of compensation for services provided from January 1997 through May 1998. The JCC's factual findings as to that time period are not supported by competent substantial evidence. The record shows that Kelli provided cooking and cleaning services off and on from August 1988 forward, but also provided additional services from January 1997 through May 1998, including help with bathing, dressing, taking *745 medication,[1] and promoting personal hygiene. Under Lovell, Marlowe, and Gause, such care is compensable.
The JCC's finding that there was no medical need for attendant care before June 14, 2001, is no barrier to an award of compensation for care rendered before that time because the finding is not supported by competent substantial evidence. Dr. Collier testified that he prescribed home attendant care on June 14, 2001. However, he did not testify that there was no need for attendant care before the date of the prescription. Although the doctor initially testified that the first time he thought attendant care was "medically necessary" was the date of the prescription, he subsequently clarified that Appellant needed attendant care even before that date.
The care rendered since January 18, 2002, is clearly compensable as home assistant care because, as the record indicates, it also comprises assistance with bathing, dressing, bathroom functions, and giving medicine.
Appellant argues that the care found to be compensable should not have been limited to 61 hours per week. However, Kelli's testimony that she provides 61 hours of care each week constitutes competent substantial evidence to support the award of compensation for attendant care for 61 hours a week. Thus, the JCC did not err in limiting the award to compensation for 61 hours per week of care since January 18, 2002, and we affirm that determination.
Appellant also argues that the compensation awarded should not have been limited to the federal minimum wage. However, this was not error. In 2002, the relevant portion of section 440.13 required that compensation be paid to family members at this wage if the family member is not employed. § 440.13(2)(b), Fla. Stat. (2002). The record indicates that Kelli's most recent job before January 18, 2002, was working for a church in 2000 and simultaneously cleaning offices. This is competent substantial evidence to support the award. However, the same statute, also in effect in 1997, provides that a family member who is employed, and chooses to leave that employment to provide attendant care, will be entitled to compensation at "the per-hour value of the family member's former employment, not to exceed the per-hour value of such care available in the community at large." § 440.13(2)(b), Fla. Stat. (1997). Accordingly, a wage other than the federal minimum wage may be appropriate for compensation for care provided from January 1997 through May 1998.
Appellant argues that even the cooking, cleaning, and laundry services provided by Kelli (after her marriage) while Appellant lived alone are compensable under Allied Discount Tires v. Cook, 587 So.2d 626 (Fla. 1st DCA 1991), and Walt Disney World Co. v. Harrison, 443 So.2d 389 (Fla. 1st DCA 1983). We disagree, as both cases are inapplicable to the instant case.
In Allied Discount, the claimant testified that his injury prevented him from performing routine household chores, and the claimant's doctor and rehabilitation counselor both testified as to the medical need for housework including cooking and laundry. Moreover, there is no suggestion in Allied Discount that such care was, or would be, provided by family members. In the instant case, there is no evidence *746 that household, cooking, or laundry services were medically necessary while Appellant lived alone, and such services were provided to Appellant during that time by family members rather than by an unrelated individual. Harrison is not controlling because the claimant there was required to wear a full body cast at all times, except while bathing or performing hygiene functions, for a full six weeks after her injury and, thus, was wholly incapacitated, whereas Appellant was not, and is not, restricted in such a manner.
Also, Appellant argues that the JCC erred in failing to adjudicate a claim for an electric cart or wheelchair. We disagree because the parties stipulated that this issue had been resolved. At the hearing, Appellant's counsel stated that Dr. Collier had prescribed an electric wheelchair or electric cart, and that the carrier was willing to provide one when Appellant made his selection. Then, Appellee's counsel affirmatively agreed to that statement on the record.
Finally, Appellant argues that the JCC erred either in citing section 440.13(3)(d) in the order, or in failing to implement the provisions of that section. We disagree, as the reference to section 440.13(3)(d) is a typographical error. The JCC stated that "the statutory provision as set forth in F.S. 440.13(3)(d) must be followed to determine what qualifies as compensable attendant or custodial care," and recited case law to support the proposition that "[h]ousekeeping services, such as making the bed, cleaning the home, washing clothes, and shopping, are not the responsibility of the Employer/Carrier." The context of the citation indicates that the reference is to the statutes in effect at the times care was given. The relevant statute in 1988 is section 440.13(2)(d), Fla. Stat. (Supp.1988), the statute authorizing compensation for family members who give attendant care. This section was renumbered as (2)(f) by the 1990 amendments to the statute, renumbered as (2)(g) in 1993, and amended and renumbered as (2)(b) in 1995, remaining so in 1997 and 2002, but was never numbered (3)(d).
For the above reasons, we affirm the JCC's order as to compensation for care rendered after January 18, 2002, but reverse the JCC's order as to denial of compensation for prior care, and remand for a determination of the proper compensation consistent with this opinion.
BARFIELD and LEWIS, JJ., CONCUR.
NOTES
[1] There is no evidence that Kelli actually helped Appellant take medications before this time, but only evidence that she double-checked that Appellant had correctly taken his medications.