896 So.2d 828 (2005)
AT & T WIRELESS SERVICES, INC., and Kemper Insurance Companies, Appellants,
v.
Elizabeth CASTRO, Appellee.
No. 1D03-1264.
District Court of Appeal of Florida, First District.
February 22, 2005.
*829 William H. Rogner; Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., Winter Park, for Appellant.
Richard Goldman, Boca Raton, and Edward D. Schuster; Massey, Coican & Schuster, LLC, Fort Lauderdale, for Appellee.

ON MOTION FOR REHEARING/CLARIFICATION
HAWKES, J.
Having considered the Motions for Rehearing or Clarification, we deny the motions for rehearing. We grant the motions for clarification, withdraw our prior opinion of December 23, 2004, and issue the amended opinion set forth below.
*830 Appellants (E/C) challenge, on four grounds, the Judge of Compensation Claims' (JCC) order awarding workers' compensation benefits to Claimant. Finding three have merit, we conclude the JCC erred by: (1) awarding attendant care benefits for periods of time when the caretaker was on call, and for quality of life services, which the caretaker admitted she provided gratuitously; (2) excluding the E/C's independent medical examiner's (IME's) testimony after he waived potentially excessive fees; and (3) directing the E/C's counsel to frame his cross-examination questions in a prescribed manner. We reverse and remand.

FACTUAL AND PROCEDURAL HISTORY
Claimant was injured on the job and filed petitions for benefits seeking permanent total disability benefits for injuries to her head, neck, back, arms, hands, legs and gastrointestinal tract. In relevant part, Claimant also sought attendant care services. At a series of merits hearings, the central issues were whether Claimant was malingering and how much compensable attendant care was being provided. The JCC's final order awarded payment for twelve hours of daily attendant care.

ATTENDANT CARE BENEFITS
In a June 1999 deposition, Claimant's caretaker testified she provided eight hours of attendant care daily from November 1997-February 1998. In that same deposition, the caretaker testified that, from February 1998 on, she provided four hours of attendant care daily. Subsequently, at a March 2002 merits hearing, the caretaker testified she provided twelve hours of attendant care daily during the November 1997-February 1998 period, which included "on call" care. "On call" care was defined during the merits hearing as including those periods in which the caretaker would call Claimant from work to check on her. Also at the March 2002 hearing, the caretaker testified that, from February 1998 on, she provided four to eight hours of direct care per day; including the "on call" care, it was closer to ten to twelve hours per day.
In that portion of the JCC's order awarding attendant care, the JCC accepted a physician's testimony that Claimant may receive up to twelve hours of attendant care per day.[1] However, claimants have the burden of proving the quantity, quality, and duration of attendant services claimed. See Orange County Sheriff's Dept. v. Perez, 541 So.2d 652, 654 (Fla. 1st DCA 1989). It is erroneous for a *831 JCC to award attendant care without regard to the actual services performed by the caretaker. See Bojangles v. Kuring, 598 So.2d 250, 251 (Fla. 1st DCA 1992). If care is not provided, it cannot be compensated.
A logical consequence of this is that a caretaker cannot be compensated for time spent employed outside of the claimant's presence, even if the caretaker is considered "on call." See id. Here, once the "on call" care is subtracted, the testimony reveals the caretaker provided, at most, eight hours of direct care per day for the three months following Claimant's surgery in November 1997. The JCC's award of twelve hours of daily attendant care benefits improperly included this "on call" care.
Moreover, not all attendant care services are compensable. Normally, only direct care that is medically necessary is compensable. See Socolow, 877 So.2d at 744. "Generally, attendant care considered medically necessary includes only bathing, dressing, administering medication, and assisting with sanitary functions." Id. On the other hand, "housekeeping, transportation other than to a doctor, and other normal household duties that reflect on quality of life rather than medical necessity are generally considered gratuitous and not compensable." Id. Household services may, in limited circumstances, be compensable if the caretaker (family member or not) substantially departs from his or her daily routine to provide care, or if the claimant is completely prevented from doing such activities on his or her own. See Allied Discount Tires v. Cook, 587 So.2d 626, 627-28 (Fla. 1st DCA 1991); DeLong v. 3015 West Corp., 491 So.2d 1306, 1307 (Fla. 1st DCA 1986); Walt Disney World Co. v. Harrison, 443 So.2d 389, 393 (Fla. 1st DCA 1983).
Here, the caretaker testified she assisted Claimant with grooming, bathing, shopping, meal preparation, taking medication, cleaning, washing laundry, taking Claimant to social events, and bill paying. The caretaker testified she provided these services gratuitously, "out of the kindness of [her] heart." Incidentally, because the caretaker is Claimant's roommate, she would perform housekeeping services for her own benefit, and thus, they would not constitute a substantial departure from her daily routine.[2] No distinction was drawn in the testimony between the time spent providing compensable care and non-compensable care. Depending on which testimony the JCC chose to believe, there was some amount less than four hours, up to some amount less than eight hours, of medically necessary compensable care provided. Only this amount of compensable care can be awarded.
The JCC erred by awarding attendant care benefits which included periods of time in which the caretaker was "on call," and which included quality of life services that were gratuitously rendered. The award for payment of attendant care services is reversed. On remand, the JCC must determine the amount of compensable care provided and award payment only for that amount.

EXCESS IME FEE
The E/C's IME, a neuropsychologist, initially was charging an amount well in excess of the $400.00 statutory limit. The Claimant moved to disqualify the IME as a witness. A hearing was held where *832 evidence was presented that an adequate examination takes between twenty and thirty hours, and that an average round of neuropsychological testing costs between $2,500.00 and $2,900.00. The E/C's IME testified he spoke to numerous other neuropsychologists in the area, and none would perform the same type of testing he performed for $400.00. Thus, there was competent, substantial evidence that no physician could be obtained to perform the testing within the statutory limits.
A JCC may refuse to allow testimony by an IME when the IME charges a fee in excess of the $400.00 fee limit allowed by law.[3]See City of Riviera Beach v. Napier, 791 So.2d 1160, 1160 (Fla. 1st DCA 2001). We have suggested that an exception might apply in situations where it would be impossible to obtain an IME within the statutory fee limit. See Thompson v. Awnclean USA, Inc., 849 So.2d 1129, 1132 (Fla. 1st DCA 2003).
Here, one day after a hearing to disqualify the IME as a witness, and prior to the JCC's ruling, the E/C notified the JCC that the IME would waive his excess fees. Ultimately, however, the IME's testimony was excluded.
To satisfy due process considerations, parties must be given a meaningful opportunity to present evidence and be heard. See Rucker v. City of Ocala, 684 So.2d 836, 841 (Fla. 1st DCA 1996); Hinton v. Gold, 813 So.2d 1057, 1060 (Fla. 4th DCA 2002). Indeed, "[t]he right to call witnesses is one of the most important due process rights of a party and accordingly, the exclusion of the testimony of expert witnesses must be carefully considered and sparingly done." State v. Gerry, 855 So.2d 157, 161 (Fla. 5th DCA 2003). The E/C believed the testimony was important to its theory that Claimant was malingering, and when it was excluded, the E/C was denied its right to present its case.
The fact that another physician (with a different specialty) was allowed to testify about the test results does not render the error harmless. Clearly, the specialist's office which supervised the test and spent the twenty to thirty hours with Claimant, would be able to testify more definitively and authoritatively than someone who merely reviewed the test results. The JCC erred by excluding the IME's testimony either because once the excess fee was waived, the dispute had been resolved, or because it would have been impossible to obtain an IME without exceeding the statutory cap. Consequently, there was no reason to exclude the IME's testimony.[4] We reverse. On remand, the JCC should consider this testimony.

Limitation of Cross-Examination
The E/C also argue they were prevented from cross-examining Claimant's IME and Claimant's vocational/Social Security expert about the possibility of whether Claimant was malingering and various other "possible" scenarios. Each time E/C's counsel used the word "possible" in a question, Claimant's counsel objected that the proper standard was within a reasonable degree of medical probability or certainty. These objections were sustained. The JCC directed the E/C's counsel to frame his questions using the phrase *833 "reasonable degree of medical probability or certainty."
"One of the purposes of cross examination [sic] of an expert is to suggest the existence of a hypothesis contrary to that adopted by the expert." Butts v. State, 733 So.2d 1097, 1101 (Fla. 1st DCA 1999). For that reason, "[p]arties are permitted wide latitude in cross-examination." The Florida Bar v. Carlon, 820 So.2d 891, 897 (Fla.2002). Failure to permit full and fair cross-examination of matters testified to on direct examination is harmful error. See Coco v. State, 62 So.2d 892, 894-95 (Fla.1953); Fleming v. Albertson's Inc., 535 So.2d 682, 684 (Fla. 1st DCA 1988).
While it is true the injury, its cause, and any manifestations must be established by competent, substantial evidence within a reasonable degree of medical probability or certainty,[5] this determination is made by the fact finder when deciding whether a party has proven its case. There is no statutory requirement that every question asked of an expert on cross-examination must be phrased in the rigid terms sought by Claimant's counsel.[6] Such an inflexible requirement would be completely at odds with the practice of permitting wide latitude on cross-examination and testing the conclusions drawn by the experts.
Experts' conclusions are presented during direct examination. Ordinarily, on direct examination, the expert testifies his or her conclusions are "within a reasonable degree of medical probability." The testing of these conclusions and the factors the expert considered in forming his or her opinion are explored in cross-examination. Such testing may lead the fact finder to conclude the expert's opinion is neither well-founded, nor persuasive because the expert failed to consider the many issues raised in cross-examination. For instance, here, if the expert had never considered whether it was possible Claimant was malingering, the JCC may have concluded the expert's opinion was not persuasive. If parties were required to ask questions in terms of medical probability or certainty, they would be unable to test whether the expert fully evaluated all possibilities when forming his or her opinion. To apply a "magic words" test in cross-examination would severely restrict a party's ability to present its case. The JCC abused her discretion by sustaining the objections. We reverse and remand with instructions to permit full and fair cross-examination of the witnesses.
REVERSED and REMANDED for proceedings consistent with this opinion.
BENTON and PADOVANO, JJ., concur.
NOTES
[1] "The applicable statute for awarding compensation for attendant care is the statute in effect at the time the compensable care was given." Socolow v. Flanigans Enters., 877 So.2d 742, 744 (Fla. 1st DCA 2004) (citation omitted). For purposes of this appeal then, a written prescription for attendant care was not required since physician testimony provided the required elements. See Rockette v. Space Gateway Support, 877 So.2d 852, 853 (Fla. 1st DCA 2004); see also § 440.13(2)(b), Fla. Stat. (1997)-(2002) (E/C must provide attendant care performed at the direction and control of a physician).

Section 440.13(2)(b) was amended in 2003, and now includes greater specifications for claims for attendant care. The added language reads:
The physician shall prescribe such care in writing. The employer or carrier shall not be responsible for such care until the prescription is received by the employer and carrier, which shall specify the time periods for such care, the level of care required, and the type of assistance required. A prescription for attendant care shall not prescribe such care retroactively.
§ 440.13(2)(b), Fla. Stat. (2003). While the statutory amendment does not apply to the period at issue here (November 1997-February 2003), it does apply to any attendant care performed on or after its effective date of October 1, 2003.
[2] Moreover, testimony was provided that Claimant was able to independently perform meal preparation, laundry, and other daily routine activities, and that attendant care services were needed mostly for bill paying, filing prescriptions, and transportation to doctor's appointments.
[3] See generally § 440.13(10), Fla. Stat. (2001); Fla. Admin. Code R. 38F-7.020 (2001).

We note that on July 1, 2002, section 440.13(14)(b), Florida Statutes, was amended to exclude IME's from the statutory fee cap. See Ch. 2002-236, § 9, at 14, Laws of Fla. The amendment is applicable to all examinations performed after the amended date. See DeCuba v. Indian River Cmty. Coll., 867 So.2d 1257, 1258 (Fla. 1st DCA 2004).
[4] Because the IME never actually collected his fee, this is not a situation in which the IME would be permanently prohibited from testifying. See DeCuba, 867 So.2d at 1258.
[5] See § 440.09(1), Fla. Stat. (2001).
[6] Indeed, we have held the statutory standard may be established without using magic words. See Hunt v. Exxon Co. USA, 747 So.2d 966, 973 (Fla. 1st DCA 1999) (holding that causal relationship between employment and injury may be proven by totality of the evidence, without using statutory language).