IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BROADSPIRE, A CRAWFORD
COMPANY - TAMPA AND
STONE CONTAINER
CORPORATION,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3063

Appellants,

v.

JAMES E. JONES,

Appellee.

_____/

Opinion filed May 8, 2015.

An appeal from an order of the Judge of Compensation Claims.
Laura Roesch, Judge.

Date of Accident: October 26, 1981.

William H. Rogner, Winter Park, for Appellants.

Bill McCabe, Longwood, and Douglas H. Glicken, Orlando, for Appellee.

PER CURIAM.

The focus in this workers' compensation case is an award of twelve hours per

day of on-call attendant care payable to the wife of the claimant, James E. Jones,

who was injured in a paper mill accident in 1981, resulting in his permanent disabilities and an inability to return to work. The Employer/Carrier (E/C) appeals, arguing that the order is deficient because it was based on an inapplicable causation standard and that the amount of the on-call care is insupportable on the record presented. We affirm on the causation issue, but reverse and remand on the on-call award issue.

## I.

The basic facts here are essentially undisputed. The E/C accepted compensability of Mr. Jones's orthopedic injuries and psychological conditions of posttraumatic stress disorder syndrome (PTSD) and depression resulting from the workplace explosion that occurred in 1981, a week after his 34th birthday. Decades of care by medical professionals ensued. At around age 66, Mr. Jones sought payment of attendant care from his wife in October 2013 (she had retired from outside employment in 2008). The E/C denied the request for attendant care, claiming that the services required were for a memory problem not related to the workplace injury and were otherwise not compensable because they were of the type provided by a family member in the ordinary course of family life (so-called gratuitous services). The Judge of Compensation Claims (JCC) awarded Mr. Jones twelve hours of daily attendant care from his wife, which is the maximum allowable from a family member under section 440.13(2)(b), Florida Statutes (2013).

2

II.

A.

The first issue is whether the JCC's decision to apply the causation standard in effect at the time of Mr. Jones's 1981 workplace injury, rather than the standard in section 440.09, Florida Statutes (2013), was error. It was not. We reject the E/C's argument that a selected portion of current version of section 440.09, relating to the "burden of proof" for causation, applies as a procedural change to which Mr. Jones's claim is subject. Not all changes in the burden of proof are retroactive. See, e.g., S. Bakeries v. Cooper, 659 So. 2d 339, 340 (Fla. 1st DCA 1995) (holding statutory amendment restricting admissible medical evidence has no retroactive application because it depends on statutory processes relating to expert medical advisors, authorized treating providers, and independent medical examiners which altered parties' substantive rights). And the substantive rights of the parties generally are fixed at the time of the accident and injury. See, e.g., Sullivan v. Mayo, 121 So. 2d 424 (Fla. 1960).

Here, we conclude that the amendment to section 440.09 in 1994 affected Mr. Jones's substantive rights by changing an element of his claim with the additional requirement that he prove that his compensable injury is the "major contributing cause" of any other resulting injury; thus, under the current standard, if applied to his 1981 accident, Mr. Jones would be potentially precluded from establishing

3

causation for what was previously a compensable condition under the law in effect at the time of his workplace injury. The JCC, therefore, properly declined to apply the current version of section 440.09 as to the causation of Mr. Jones's injuries.

B.

The next issue is whether the record supports the award of twelve hours of daily attendant care by Mr. Jones's wife. Factual findings are reviewed for competent substantial evidence (CSE); interpretations of law are reviewed de novo. See Bronson's Inc. v. Mann, 70 So. 3d 637, 641 (Fla. 1st DCA 2011). Mr. Jones had the burden of proving the quantity, quality, and duration of the attendant care. See Adams Bldg. Materials, Inc., v. Brooks, 892 So. 2d 527, 530 (Fla. 1st DCA 2004) (citing Orange Cnty. Sheriff's Dep't v. Perez, 541 So. 2d 652, 654 (Fla. 1st DCA 1989) (holding claimant has burden to prove "the quantity, quality and duration of attendant services claimed")).

Based on Mrs. Jones's testimony, the JCC found that Mr. Jones has anxiety attacks, without warning, two or three times a week, and sometimes more frequently. When this occurs, Mrs. Jones reacts "by reassuring him, letting him know that she is there for him, [and] letting him know that she will never leave him." According to Mrs. Jones, her husband "sometimes gets over it in two hours or less and sometimes it takes him all day." Although Mr. Jones is physically able to use the bathroom, bathe, dress, eat, and administer his medication on his own, his wife must

4

often remind him to do so. Mr. Jones no longer drives and his wife takes him places, including the park and his doctor's office. Mrs. Jones performs other household duties, such as cooking, which she has done throughout their marriage of forty years. As noted by the JCC, Mrs. Jones testified that she does not fear that her husband will hurt himself or others, but she feels he cannot take care of himself and that she must be with him "pretty much constantly."

In arriving at the award of attendant care, the JCC accepted the opinion of Dr. Billingsley, the authorized psychiatrist, who testified that Mr. Jones suffers from cognitive deficits related to his long-standing diagnosis of PTSD and depression. Dr. Billingsley opined that the services provided by Mrs. Jones were "medically necessary" and that, in any event, someone needed to be "on-call" for at least sixteen hours a day because Claimant's cognitive deficits "are of such a severity that his ability to function in daily life is severely impaired." Nevertheless, with the exception of driving, Dr. Billingsley did not fully explain which activities of daily living Mr. Jones is unable to perform; indeed, he declined to address any physical limitations, which were outside his field of expertise. In general, he viewed Mr. Jones's limitations as related to Mr. Jones's desire to do things and his ability to tolerate stress. Accordingly, the only specific services described by Dr. Billingsley as medically necessary for Mr. Jones are daily reminders and the expressions of emotional support, which is consistent with Mrs. Jones's testimony that her husband

5

has independence in activities such as bathing, eating, dressing, and sanitary functions.

An award of attendant care is governed by the statute in effect at the time the attendant care is provided.[1] The current definition of attendant care states in pertinent part:

> Family members may provide nonprofessional attendant care, but may not be compensated under this chapter for care that falls within the scope of household duties and other services normally and gratuitously provided by family members. "Family member" means a spouse . . . .

§ 440.13(1)(b), Fla. Stat. (2013). The case law in effect at the time of Mr. Jones's 1981 workplace injury establishes that ordinary household duties—such as shopping and cooking—are gratuitous in nature and not compensable. See, e.g., Pan Am. World Airways, Inc., v. Weaver, 226 So. 2d 801, 802-03 (Fla. 1969) (finding judge appropriately separated non-compensable housekeeping services from compensable practical nursing services in attendant care award); State Dep't of Agric. &

---

[1] See Socolow v. Flanigans Enters., 877 So. 2d 742, 744 (Fla. 1st DCA 2004) (holding applicable statute for compensation award for attendant care is statute in effect at time compensable care is given); cf. Diana v. HLS Cos., 670 So. 2d 125, 126-27 (Fla. 1st DCA 1996) (holding 1990 statutory amendment which precluded an award of attendant care "beyond the scope of household duties" could not be applied retroactively "[t]o the extent that this statutory language might be read to constitute a substantive change"); see also Mr. C's TV Rental v. Murray, 559 So. 2d 452, 453 (Fla. 1st DCA 1990) (holding amendment limiting attendant care by family member to no more than twelve hours per day applied retroactively because claimant's substantive right to receive twenty-four hour per day attendant care was unaffected).

Consumer Servs. v. Handy, 413 So. 2d 808, 810 (Fla. 1st DCA 1982) (reversing award of sixteen hours of attendant care by claimant's wife where part of her time was spent shopping, cooking, and performing other household duties that "are considered gratuitous and cannot form the basis of an award for attendant care services"). Under the applicable prior case law, only "extraordinary" services by family members, such as assistance with bathing, dressing, administering medication, and sanitary functions, may be considered compensable attendant care. See Don Harris Plumbing Co. v. Henderson, 454 So. 2d 745, 746 (Fla. 1st DCA 1984). This Court has also held that "[s]upportive services such as driving the claimant to the store and other places, other than transportation necessary for medical treatment . . . constitute quality of life activities indemnified under disability compensation benefits rather than attendant care . . . ." Marlowe v. Dogs Only Grooming, 589 So. 2d 990, 993-94 (Fla. 1st DCA 1991); see also Timothy Bowser Constr. Co. v. Kowalski, 605 So. 2d 885, 887 (Fla. 1st DCA 1992) (holding transportation for outings non-compensable despite evidence of medical necessity). With respect to the type of services provided by a family member that may be deemed compensable, no significant difference exists between the law in effect in 1981 and subsequent revisions to the statute.

The JCC made no specific finding that any of the services provided by Mrs. Jones are extraordinary services, and thereby compensable, despite the fact that

some services were non-compensable ordinary household duties (such as cooking) and quality of life activities (such as driving Mr. Jones to the park). Furthermore, even assuming the record supported a finding that the reminders and emotional support provided by Mrs. Jones were "extraordinary services," the JCC did not distinguish the compensable services from the non-compensable services or determine the amount of time Mrs. Jones spends performing compensable services.[2]

In limited circumstances, household services may be compensable if the caretaker substantially departs from his or her daily routine to provide the care, or if the claimant is completely prevented from doing such activities on his or her own. See AT&T Wireless Servs. Inc. v. Castro, 896 So. 2d 828, 831 (Fla. 1st DCA 2005). The JCC here, however, did not make a finding that Mrs. Jones "substantially departed" from her daily routine. Similarly, the JCC made no finding that Mr. Jones is "completely prevented" from performing quality of life activities.

Conversely, no reduction of the attendant care for the non-compensable services provided by Mrs. Jones would be necessary if Mr. Jones requires passive "on-call" attendant care. Caron v. Systematic Air Servs., 576 So. 2d 372, 374 (Fla. 1st DCA 1991) (holding reduction in compensable attendant care provided by family

---

[2] Claimant's wife testified that she provides Claimant with reminders and reassurances twelve hours a day, but also that his anxiety attacks occur only two or three times a week lasting two hours or less (sometimes all day), and that Claimant sleeps most of the day and is occasionally left unattended.

members for claimant requiring constant monitoring "[i]nconsistent with our decisions holding that 'on call' attendant care provided by a family member is not subject to reduction merely because the family member is involved in other household activities while simultaneously monitoring the activities of a claimant") (citing Builders Square v. Drake, 557 So. 2d 115 (Fla. 1st DCA 1990); Williams v. Amax Chem. Corp., 543 So. 2d 277 (Fla. 1st DCA 1989); Amador v. Parts Depot, Inc., 508 So. 2d 1320 (Fla. 1st DCA 1987); Standard Blasting & Coating v. Hayman, 476 So. 2d 1385, 1386-87 (Fla. 1st DCA 1985)). Here, the JCC did not make a specific finding that Mr. Jones requires "on-call" attendant care that would support such an award for otherwise non-compensable services by his wife; it is unclear whether the record would support a finding of "on-call" care.

In Hayman, a distinction was recognized between passive "on-call" care and the active provision of attendant care. The court in Hayman acknowledged the general proposition that ordinary household chores which would have been provided anyway are not compensable. 476 So. 2d at 1386. In that case, the claimant, as a result of his compensable workplace injury, was left with the intellectual capacity of a three-year-old. His wife assisted him with sanitary functions, monitored his medication, and observed him to make sure he did not hurt himself. Although the claimant's wife performed ordinary household chores while also monitoring the claimant, the court in Hayman reasoned that she was "in effect, doing two things at

9

once. That is, even though she might be cooking or doing laundry or whatever, she is simultaneously monitoring her husband's whereabouts and activities to [e]nsure that he does not injure himself." Id. On that basis, the court affirmed the award of "on-call" attendant care provided by the claimant's wife. Id. at 1387.

Our review of this Court's case law setting the parameters of "on-call" attendant care finds similar safety-related concerns under different factual situations that justify passive on-call care. For example, the claimant in Amador suffered from organic brain damage from a workplace fall that left him with a memory problem affecting all of his functioning, including attending to his basic needs. 508 So. 2d at 1321. The evidence established that the claimant could not be left alone, even for a few hours. Id. See also Caron, 576 So. 2d at 374 (reversing denial of increased attendant care where undisputed evidence established claimant needed attendant care 24 hours per day to monitor his activities and help him control his sometime dangerous and often irrational behavior); Williams, 543 So. 2d at 279-80 (reversing four-hour limitation on attendant care because evidence supported "on-call" supervision where claimant, with aggravated seizure disorder and impaired memory function equal to that of two-year-old, constituted danger to himself). In other cases, passive "on-call" attendant care was warranted where the compensable injuries prevented the claimant from performing virtually all functions of daily living. See, e.g., Dalton v. Orange Cnty. Sheriff, 503 So. 2d 406 (Fla. 1st DCA 1987) (affirming

10

need for "on-call" attendant care where claimant was unable to perform any functions for himself and required constant assistance); City of N. Miami v. Towers, 557 So. 2d 112, 113 (Fla. 1st DCA 1990) (reversing limited award of attendant care where claimant was incontinent and required attendant care to perform nearly all normal chores of daily living); Drake, 557 So. 2d at 116 (affirming award of "on-call" assistance where paraplegic claimant required both skilled and unskilled assistance for most aspects of living).

In this case, Dr. Billingsley testified that Mr. Jones needs "on-call" assistance in activities of daily living for sixteen hours a day. On the other hand, Dr. Billingsley also indicated that "on-call" meant someone "needs to be available to check on [Mr. Jones] regularly throughout the day although not continuously eyes on." Given other evidence that Mr. Jones is independent in significant activities of daily living and is left unattended at times without concern for his safety, Dr. Billingsley's use of the term "on-call" in this context is not determinative. See, e.g., Trejo-Perez v. Arry's Roofing, 141 So. 2d 220, 222 (Fla. 1st DCA 2014) (resolution of factual issues depends on substance of evidence and not use of so-called "magic words" by medical witness).

Based on the foregoing, we reverse the award for attendant care, and remand for further proceedings so that the JCC can make specific findings and conclusions

of law as to whether the care provided by Mrs. Jones is compensable as "extraordinary services" or awardable "on-call" attendant care.

REVERSED and REMANDED for further proceedings in accordance with this opinion.

WOLF, MAKAR, and OSTERHAUS, JJ., CONCUR.