# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D2025-0990

———————————————

PURPLE PRIDE, INC., and FIRST
PROTECTIVE INSURANCE
COMPANY,

    Appellants/Cross-Appellees,

    v.

LARRY BURGESS,

    Appellee/Cross-Appellant.

———————————————

On appeal from the Office of the Judges of Compensation Claims.
Jack A. Weiss, Judge of Compensation Claims.

Date of Accident: January 26, 2019.

March 18, 2026

TREADWELL, J.

Claimant Larry Burgess suffered a work-related motor vehicle accident in 2019 that caused him to become tetraplegic (or quadriplegic). He requires around-the-clock attendant care for which the Employer/Carrier (E/C) has accepted compensability under Florida's Workers' Compensation Law. Claimant lives in Atlanta, Georgia, where he receives such care. In this case, Claimant prevailed below in his claim for additional medical benefits to take a non-medical trip to visit family in New York. For the following reasons, we set aside the Final Compensation Order.

## I.

In 2024, Claimant filed a petition for benefits seeking attendant care and other medical benefits for a trip he intended to take to visit family in New York. Specifically, he sought benefits for the extra cost of traveling attendants, including their overtime pay and accommodations, and the extra cost of renting a Hoyer lift, commode chair, and other durable medical equipment (DME) needed for the trip. In response, the E/C characterized the intended trip as a "personal vacation" and therefore denied that these additional expenses were medically necessary.

At the final hearing, the Judge of Compensation Claims (JCC) admitted the deposition of Claimant's psychotherapist who testified that a visit to see family in New York would improve Claimant's mental health. The psychotherapist stated that the trip is "medically necessary" in the sense that it could improve Claimant's symptoms related to depression and anxiety. The JCC, however, rejected the psychotherapist's conclusion about the medical necessity of the trip because the Workers' Compensation Law defines "medical necessity" differently. *See* § 440.13(1)(k), Fla. Stat. (2024) (defining "medical necessity" as "any medical service or medical supply which is used to identify or treat an illness or injury, is appropriate to the patient's diagnosis and status of recovery, and is consistent with the location of service, the level of care provided, and applicable practice parameters."). Under the statutory definition, the JCC concluded that Claimant failed to prove that the trip to New York to visit family was medically necessary.

Nevertheless, the JCC concluded that the additional costs Claimant would incur to travel with the attendants and DME should be provided by the E/C. The JCC relied on the E/C's acknowledgement that, regardless of any trip, Claimant needs around-the-clock attendant care and DME as a result of the work-related accident. In the JCC's view, the E/C should cover those costs anywhere, pursuant to "the maxim that industry is responsible for what industry causes." Accordingly, the JCC

2

granted Claimant's petition for the additional, trip-related benefits. The E/C appealed.[1]

## II.

The Workers' Compensation Law requires employers to furnish "medically necessary" remedial treatment, care, and attendance to an injured employee. § 440.13(2)(a), Fla. Stat. (2024). Thus, "'medically necessary' constitutes the general defining term under which all compensable benefits awarded under section 440.13, Florida Statutes, must fall." *Montgomery Ward v. Lovell*, 652 So. 2d 509, 511 (Fla. 1st DCA 1995). Because the JCC concluded that Claimant's trip to New York was not medically necessary, it was error to grant Claimant the additional medical benefits he sought for the trip.

This Court has previously distinguished between travel that is medically necessary and travel that merely improves a claimant's quality of life. *See Marlowe v. Dogs Only Grooming*, 589 So. 2d 990, 994 (Fla. 1st DCA 1991) (concluding that transportation services to the store and other places for "various and sundry purposes" constitute quality-of-life activities, in contrast to transportation necessary for medical treatment). Quality-of-life travel includes visits "to the beach, the grocery store, the movies, and the mall." *Timothy Bowser Const. Co. v. Kowalski*, 605 So. 2d 885, 887 (Fla. 1st DCA 1992); *see also Broadspire v. Jones*, 164 So. 3d 708, 712 (Fla. 1st DCA 2015) (quality-of-life travel includes visits "to the park"). It also includes visits to a claimant's mother's home. *Dade Cnty. Sch. Bd. v. Grier*, 648 So. 2d 805, 806 (Fla. 1st DCA 1994). It even includes transportation to a claimant's father's funeral. *State, Hendry Cnty. Corr. Inst., Div. of Risk Mgmt. v. Hughes*, 412 So. 2d 922, 923 (Fla. 1st DCA 1982). In short, "transportation other than to a doctor"

---

[1] The E/C first argues on appeal that, while the JCC had jurisdiction to adjudicate the dispute, the JCC did not have jurisdiction to ultimately order the E/C to "pay Claimant" directly for the additional benefits. In view of our decision to reverse the JCC's Final Compensation Order on the merits, we do not address the E/C's jurisdictional argument with respect to part of the relief the JCC granted.

reflects on quality of life rather than medical necessity and is "generally considered gratuitous and not compensable." *Socolow v. Flanigans Enterprises*, 877 So. 2d 742, 744 (Fla. 1st DCA 2004); *see also Hughes*, 412 So. 2d at 923 ("The statute does not require the employer/carrier to pay for travel undertaken for reasons unrelated to the treatment of injuries sustained by the employee in a compensable industrial accident.")

Here, because the JCC concluded that Claimant's proposed trip to New York was not medically necessary, the trip—at best—could only be categorized as travel to improve Claimant's quality of life. The Legislature has not included such quality-of-life travel within the ambit of medical benefits available under the Workers' Compensation Law. It was therefore error for the JCC to grant benefits for a trip that the JCC determined was not medically necessary. Accordingly, we set aside the JCC's Final Compensation Order.[2]

SET ASIDE.

OSTERHAUS, C.J., concurs; NORDBY, J., concurs with opinion.

---

[2] Claimant's cross-appeal is meritless. He takes no issue with the underlying Final Compensation Order, which granted him the full relief he sought. *Cf. Webb Gen. Contracting, Inc. v. PDM Hydrostorage, Inc.*, 397 So. 2d 1058, 1059-60 (Fla. 3d DCA 1981) ("The function of a cross-appeal is to call into question error in the judgment appealed, which, although substantially favorable to the appellee, does not completely accord the relief to which the appellee believes itself entitled."). Instead, Claimant's "cross-appeal" is a wide-ranging, preemptive, constitutional attack on section 440.13, Florida Statutes, "[i]n the event that the law is interpreted" by this Court to deny Claimant the additional medical benefits he seeks. No rule of law or procedure recognizes Claimant's attempt to "cross-appeal" a ruling before the ruling even happens.

4

———————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————————

NORDBY, J., concurring.

I fully join the majority opinion setting aside the JCC's order. I write merely to highlight an appellate procedural matter.

As the majority opinion explains in footnote 2, Claimant filed a purported cross-appeal that sought to preemptively raise a constitutional challenge. In his notice of cross-appeal, Claimant stated that he was planning to challenge the constitutionality of section 440.13, Florida Statutes. But he failed to file and serve a notice of constitutional challenge on the Attorney General, as required by Florida Rule of Appellate Procedure 9.425.

This rule of appellate procedure, which was adopted in 2020, requires the filing and service of such a notice:

In cases not involving criminal or collateral criminal proceedings, a party that files a petition, brief, written motion, or other document drawing into question the constitutionality of a state statute or state constitutional provision, at the time the document is filed in the case, shall:

(a) file a notice of constitutional question stating the question and identifying the document that raises it; and

(b) serve the notice and a copy of the petition, brief, written motion, or other document, in compliance with rule 9.420, on the attorney general.

Service of the petition, brief, written motion, or other document does not require joinder of the attorney general

5

as a party to the action. Notice under this rule is not required if the attorney general is a party, or counsel to a party, to a proceeding under these rules.

Fla. R. App. P. 9.425. These requirements are in addition to the notice requirements imposed at the trial court level by Florida Rule of Civil Procedure 1.071. To aid attorneys and litigants in complying with Rule 9.425, the appellate rules include a model notice form (Rule 9.900(m)).

Although we disposed of Claimant's purported cross-appeal as meritless, had it been a true cross-appeal, and had there been any merit to his constitutional claim, failure to provide timely notice to the Attorney General could have foreclosed our consideration of the claim. *See Lee Mem'l Health Sys. v. Progressive Select Ins. Co.*, 260 So. 3d 1038, 1041 (Fla. 2018) ("We agree with Lee Memorial that the Second District should not have addressed the contract-impairment issue. Progressive did not serve proper notice on the Attorney General, and the trial court's decision not to rule on that issue was therefore proper. Accordingly, we reverse the portion of the Second District's decision declaring the LMHS Lien Law a violation of article I, section 10 and do not address the merits of this claim."); *cf. Fla. Atl. Univ. Bd. of Trs. v. Harbor Branch Oceanographic Inst. Found., Inc.*, 423 So. 3d 842, 848–49 (Fla. 2025) ("As to the attorney general, she was notified by the Foundation pursuant to Florida Rule of Appellate Procedure 9.425 while this matter was on appeal before the Fourth District. The attorney general neither filed any briefs nor argued before the Fourth District. We need not and do not decide here that a party's failure to comply with rule 1.071 can always be excused by later conduct on appeal. Nor do we hold that any state litigant has the power to waive the attorney general's right to be heard pursuant to the rule. The attorney general certainly has authority to waive compliance with rule 1.071, and in this case gave every indication of having done so when this matter was before the Fourth District.").

In short, attorneys and litigants should be mindful of Rule 9.425 when seeking to raise constitutional challenges.

———————————————

William H. Rogner, HR Law, P.A., Orlando, for Appellants/Cross-Appellees.

Randall Porcher, Morgan & Morgan, Tallahassee, for Appellee/Cross-Appellant.